CASE 53—PETITION EQUITY—MARCH 19.

## Sams, &c., v. Sams' Administrator.

APPEAL FROM ESTILL CIRCUIT COURT.

1. LEGITIMACY.—The statute which provides that "if a man, having had a child by a woman, shall afterwards marry her, such child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate," does not apply where a *married* man has children by a woman other than his wife, and afterwards marries her, the first marriage tie having been severed.

2. CONSTRUCTION OF STATUTES.—The letter of a statute will not be followed where it leads to an absurd conclusion; the reason for its enactment must enter into its interpretation.

C. F. AND A. R. BURNAM AND WHITE FOR APPELLANTS.

The statute is conclusive as to the legitimacy of appellants. The statute applies where *any man*, whether married or single, has children by a woman and afterwards marries her, provided he recognizes the children as his. The question of public policy is one to be addressed to the Legislature and not to the courts, which must enforce the law as they find it. (Gen. Stats., chap. 31, sec. 6; Jackson v. Lewis, 17

Sams, &c., v. Sams' Administrator.

Johns., 477; Maillard v. Lawrence, 16 How. (U. S.), 260-1; 9 Barbour, 161; 2 Cranch, 358; Potter's Dwarris, 126, 143, 200 and notes; 14 Bush, 579; Jackson's Adm'r v. Moores and Wife, 8 Dana, 171; Drain v. Violett, 2 Bush, 155; Dannelli v. Dannelli's Adm'r, 4 Bush, 59.)

SAME COUNSEL FILED PETITION FOR REHEARING, WHICH WAS OVERRULED.

RIDDELL & FLUTY.

The statute was not intended to apply to a case where a *married* man has children by a woman other than his wife and afterwards marries her. Such a construction of the statute is contrary to justice and reason, and would be subversive of good morals, and is, therefore to be avoided if possible.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Leroy Sams died in the county of Estill in the year 1885, intestate, leaving surviving him his widow, Ann Sams, who was his second wife, and four children by his first marriage. He owned land of considerable value, and personal estate valued at twenty-five or thirty thousand dollars. His last wife, at the time of their marriage, was the mother of seven children, all of whom were born out of lawful wedlock, she never having married until her marriage with the intestate. Fannie and Nancy, two of these illegitimate children, asserted a claim to an equal interest in the estate with the children by the first wife, upon the ground that they were the children of the intestate, and were so recognized by him during his lifetime, and that the marriage consummated between him and their mother rendered them legitimate under the statute, and entitled them to share in the distribution of his personalty and in the division of his land. The statute provides, "if a man having had a child by a woman shall afterwards marry

her, such child, or its descendants, if recognized by him before or after marriage, shall be deemed legitimate.''

This action was instituted in the court below by the administrator of the estate and the children of the first wife, against the widow and the two children who are claiming to be heirs of the intestate, for the purpose of having distribution and determining the right of these children to an interest in the estate.

The widow seems to have made a contract with the administrator and heirs by which she agreed to take one seventh of the personalty as her full interest in the distribution; that, upon a proper state of pleading, was set aside, and the widow left to take such an interest in the personal and real estate as she was entitled to under the law of descent and distribution. Her rights as widow, however, are not here involved. The chancellor adjudged that the two children, Fannie and Nancy, were not entitled to any part of the estate, and that question is the only one presented. It appears that these two children were born, the one about eight, and the other some ten years prior to the death of intestate's first wife. They were recognized by the intestate as his children during the life of the first wife, and always after her death. The name of Fannie Ann Green, one of the children, was changed, by an order of the Estill county court, to Fannie Ann Sams, the record reciting, *that Leroy Sams, the father of the child, consents to the same.* It is also shown that the intestate, on his death-bed, expressed a wish that each of the two children should inherit from him as much of his estate as any one of his children by his first wife. Their mother states that the intestate was the father of the two girls, .

and the fact of the recognition by him of them as his children is clearly established, and their right to inherit from the intestate must depend upon the construction given the statute by virtue of which it is maintained they are legitimate.

It is insisted by counsel for the appellants that the meaning and intention of the statute is so plain that but one interpretation can be given it; and although the children were begotten by the intestate when he was the lawful husband of another, his adulterous practices with an unchaste woman, and unfaithfulness to his own wife and children, cannot be considered in determining the rights of those who were not participants in the wrong, and whose rights the statute was enacted to protect.

If the case before us, or that class of cases where the husband has violated his marriage vows, and become the father of children by an adulterous sexual connection with another woman during the marital relation, had been the subject of legislative thought, it can scarcely be supposed that any law would have been enacted by which the children of the adulterous intercourse would be made legitimate, that they might inherit with the children of the lawful wife equal parts of his estate.  Such a statute, if so construed, would only invite the husband to desert his wife, and the woman of easy virtue to encourage the violation of his marriage vows, that she might some day become his lawful wife and her children the rightful heirs of his estate.  The motive to supplant the love of a true woman by the lewd practices of degraded women would be found in such a statute, and the law, instead of secur-

ing to the innocent offspring an interest in the estate of
the father, and encouraging the latter to make repara-
tion for the wrong committed by marrying the mother,
would invite the commission of great moral wrong, and
hold out an inducement to the guilty parties to remove
those who stood in the way of legitimizing their chil-
dren by the consummation of the contract of marriage.

Where the offspring is the result of an illicit inter-
course between unmarried people, the Legislature saw
the necessity of enacting some statute by which the
children in a certain state of case might be made legiti-
mate, and, therefore, the law has said to the parties, if
you will marry, your children shall not be bastardized,
but will be under the law your legitimate offspring ; and
to say that this law applied to cases where married men
were being guilty of adultery, and as an encouragement
to them to do better, and to relieve their offspring from
the position in which they are placed by the law, would
be an absurd construction of this statute.

It is a well-settled rule of construction, that the letter
of a statute will not be followed when it leads to an
absurd conclusion ; but, on the contrary, the reason for
the enactment must enter into its interpretation, so as
to determine what was intended to be accomplished
by it.

It is true, the statute provides that if "*a man* hav-
ing had a child by a woman, afterwards marry her, and
recognize the child as his, it shall be held legitimate."
The language might be applied to any man, whether
single or married ; but was such the legislative purpose?

The statute provides, that "*a man shall not marry
his mother, grandmother, daughter or grand-daugh-*

Sams, &c., v. Sams' Administrator.

*ter, nor shall a woman marry her father, brother,"*
*etc.* This statute was not intended to apply to those
who are married, by saying to them, you can not leave
your lawful wife and marry your near kindred, because
such a marriage to any woman would be unlawful, and
the party guilty of bigamy; but the language is ad-
dressed to those who are single, and are not, at their
second marriage, the lawful husband or wife of another.
It was not to encourage those who had entered upon the
marital relation to forsake their marriage vows, and co-
habit with others, in anticipation of a future marriage,
with a view of making their offspring legitimate, that
this statute was enacted, but to make the illegitimate
children, begotten by one unmarried, legitimate upon
his marrying the mother.

Where a marriage is contracted in good faith, under
the belief by both parties that the former husband or
wife was dead, then the children born of such marriage
are made by our statute legitimate. The mistake is
made to apply to both parties; but when a married man
is living in open adultery with another than his wife,
with offspring in existence, the result of the unlawful
association, no statute or rule of policy should be
adopted by which such children should become legit-
imate, and inherit with the children of the lawful
wife the father's estate, because he happens, after the
death of his wife, to marry his concubine. No such
construction should be given the statute before us.

The statute, if construed to apply to a man who is
married at the time he begets the illegitimate children,
its literal meaning would also apply to children begot-
ten of a woman who was, at the time, the lawful wife
of another, as well as to an unmarried woman.

vol 85—26.

The statute provides : "If a man having had a child by a woman shall afterwards marry her," etc., making no distinction between a single woman and one married, and to follow the strict interpretation, or rather the language used, if the child was born of a married woman whose husband should thereafter die, and she marry the reputed father, then his recognition of the child would make it the lawful heir of the last husband. This would be a novel construction, and lead to a conclusion directly opposite to that intended by the Legislature.

The father, if he so regards himself, may provide for such children by a last will and testament, or a statute has been enacted, and now the law, by which one may render another capable of inheriting as his heir-at-law by adopting him as such by petition filed in the circuit court of the county of his residence. Under this statute, however, the party proposing to make another his heir, if married, cannot do so unless his wife join in the petition, so that every opportunity is afforded parties who are bound to others by natural ties to provide for them either by last will or by adopting them as heirs-at-law. To construe the statute by its letter in this case would not only conflict with the legislative intent, but would encourage the faithless husband to pursue his immoral practices, and invite his concubine to terminate by intrigue, and perhaps crime, the existence of the marital relation.

The judgment below is affirmed.