Smith, J.
The question in this case is simply this-. Whether on the facts found by the trial court, Margaret C. McNicoll, the defendant in error, is the legitimate daughter of Henry Mc-Nicoll, deceased, and therefore as such entitled to a share *298 in the real estate in this city, described in the petition in the case, which was devised by the will of Peter McNicoll, deceased, to his son, the said Henry McNicoll, for his lifetime, and at his decease to go to the heirs of his body in fee simple. The facts as found by the trial court, material to the case, briefly stated are these: Peter McNicoll at the time of the making of his will, and at his death, was a citizen dí and resident of Hamilton county. His son Henry was also a citizen and resident of said county from 1870 until 1890. The next two years he lived in Dayton, Kentucky, and then moved to Clermont county, Ohio, where he resided until his death, December 19, 1893. In 1855 he was married to Mary Gralbreath, and the plaintiff in error is the only offspring of such marriage. In 1803} his said wife was divorced from him by a decree of the court of common pleas of Hamilton county, Ohio.
Elizabeth Meyer is the mother of Margaret C. McNicoll. She was married December 13, 1867, to one S. P, Reasoner. He was a soldier in the United States army for some time, but was continuously absent from his wife, in the south, from July 13, 1869, and his said wife from 1869 to 1878 was a resident of the State of Kentucky, and always therein, and during that time never saw her said husband. In 1875 and thereafter, Henry McNicoll had illicit relations with Mrs. Reasoner, and was the father by her of the said Margaret McNicoll, who was born in Newport, Ky., September 10, 1,876. In 1878, Mrs. Reasoner, with her daughter, removed to Cincinnati, and on April 23, 1889, she obtained a decree o'f. divorce from "her husband by the judgment of the court of \common pleas of this county. On the 27th of .June, 1889„. the said Henry McNicoll and Mrs. Reasoner ■were married! in Covington, Ky., both of them being then residents of Hamilton county. At all times from her birth 'in 1876, until his death in 1893, Henry McNicoll recognized and acknowledged!, said Margaret as his child, and after *299 his marriage to her mother, the daughter resided with him in his family, and he provided for her support, and by his last will recognized her as one of his heirs and devisees. The plaintiff and the defendant are the only children or descendants of said Henry McNicoll who survive him,
The statute of the state of Kentucky, in force during all of this time (Revised Statutes sec. 1398), isas follows: “If a man having had a child by a woman, afterwards marry her, such child or its descendents, if recognized by him before or after marriage, shall be deemed legitimate.” It was also found by the court as a fact, that the court of appeals of that state, in 1887, in deciding the case of Sams vs. Sams, reported in 85 Kentucky Reports 316, held and decided, that this statute did not apply to a case where a man had children during the coverture of the man with another woman, and who might after-wards marry; and that such is now the law of the State of Kentucky.
The court of common pleas on this finding of facts, having held and adjudged that Margaret McNicoll was the legitimate child of Henry McNicoll, and as such was entitled under'the will of Peter McNicoll to a share of the real estate described in the petition, this proceeding in error is brought, seeking the reversal of such judgment.
During all of the time mentioned in the finding, the statute of Ohio has provided, in substance, as it now stands in section 4175, Revised Statutes: “When a man has by a woman one or more children, and afterwards inter-marries with her, such issue, if acknowledged by him as his child or children, shall be deemed legitimate; and the issue of parents whose marriage is deemed null in law, shall nevertheless be legitimate.”
The first question which naturally arises is, whether the legitimacy or illegitimacy of the plaintiff below is to be settled by the provisions of the Ohio or of the Kentucky *300 statute. Peter McNicoll, under whose will the controversy arises, was a resident of this st^te, and the land devised by it was situated in this county. Henry McNicoll, the father of Margaret, was a resident of Ohio when the child was begotten and born, and both the father and mother were residents of Onio when they were married to each other, and while a resident of this state the father acknowledged her as his child — before and after his marriage to her mother. It seems to us clear therefore, in the light of the many authorities cited by counsel for defendant in error, and which we do not deem necessary to mention, (for as we understand the contrary is not insisted upon), that the statute of his state is the one which must govern in ’this case.
If this be so, we are not able to see why the facts stated do no bring this case clearly within the letter (at least) of the statute we have quoted. Surely Henry McNicoll had by this woman, this child, and afterwards he married the mother, and acknowledged the child as his own. Why in accordance wiN the language of the statute is she not to be deemed legitimate? The statute says she shall be, and how shall we escape from it?
But it is urged by counsel for plaintiff that it ought not to receive such construction, for several reasons. First, That it could not have been the intention of the legislature to provide that where from the illicit and criminal intercourse of .persons, one or both of whom were then married to another person or persons, a child was begoiten and born, that the subsequent valid marriage of the man and the woman, and the acknowledgment by him of the child as his, should legitimate it, for the reason that this would tend to encourage such illicit and criminal intercourse between persons who could not at the time lawfully intermarry. That it would be against public policy to do this, and such intention can not properly be imputed to the legislature. Second, That at common law the doctrine was, “once a bastard, always a *301 bastard, and that statutes changing this are to be strictly, construed, and as the civil law on which the statute in question is based, did not operate to legitimize adulterous bastards and the Louisiana civil code and the code Napoleon, which are based thereon, expressly provide that the marriage of the parents and acknowledgment of the child shall not legitimate such issue, that these are strong reasons why the same interpretation shall be given to our statute; and third, that the decision of the supreme court of Kentucky, in the case of Sams vs. Sams, 85 Ky. 396, construing the Kentucky statute above quoted, and which is practically conceded to be in substance the same as the Ohio statute, and on a state of fact almost the same as exists in this case, was, that it did not apply to the fruits of an adulterous intercourse, and that this interpretation has received the sanction and approval of courts and law-writers of high authority, and that there is not good authority to the contrary— and for these reasons the same interpretation should be placed upon the Ohio statute.
It can not be denied that there is plausibility in these claims which were urged upon us with much force by the counsel for the plaintiff in erorr. But if the legislature has said in clear and unmistakable language, and without any exception or qualification, as we think it has done, in effect, that if the father of a bastard child, afterwards’ marries the mother and acknowledges the child as his, that it shall be deemed his legitimate child,how can a court, called upon to apply the statute to a particular case, read into it exceptions or qualifications, which the legislature has not seen proper to place there? And especially upon the ground that in the opinion of the court public policy would demand that they should have been there, or that to make the statute conform thereto, they should be read into it? It seems to us that this would be going directly in the face of numerous and clear decisions of our own Supreme Court. See the *302 cases of Patton vs. Sheriff, 2 Ohio 395; Hurd vs. Robinson, 11 Ohio St. 23; 2 Woodbury vs. Barry, 18 Ohio St. 456; Bridge Co. vs. Bowman, 41 Ohio St. 37; and the case of Deem vs. Millikin, 6th C. C. Rep. 357, which was affirmed by the Supreme Court on the reasoning of the judge delivering the opinion of the Circuit Court. See 34 Law Bull. 262. The doctrine of these cases, as we understand, laid down with great force and clearness, is to the effect that it would be highly improper for a court called upon to construe a statute, which in its opinion, as it apparently stands, is inconsistent with its ideas of policy or justice, to distort the language or its evident meaning, in such manner as to give it a construction consistent with its own ideas of justice or policy. Or, as stated by Judge Hash in announcing the decision of the court in the Bowman case (41 Ohio St.37): “If the language used by the legislature in a statute is precise and unambiguous, we conceive it to be our.duty to interpret the words in their natural and ordinary sense, although-the result may conflict with our ideas of public policy. ” See also the language used by Judge Shauck in the decision of the case of Deem v. Millikin above referred to, on page 359-60.
But why should such a provision as this in our statute,if it be held to embrace a case of the kind before us,be deemed to be against public policy ? In the first place,it seems to us to be entirely consistent and in line, with the clear and acknowledged intention of the legislature in its enactment,, viz: to remove the burder and disgrace of illegitimacy from those who themselves are innocent, though they were begotten in the illicit, or even the criminal intercourse cf their parents. Can it not as truly be said that when our statute provides, as ‘it does, that where a child ip the result of such illicit intercourse between unmarried persons, it may be made legitimate by the marriage of the parents, and the acknowledgment of the father that it is his child, that this is *303 an encouragement of such illicit relations, and therefore is against public policy,- — ns in a case like that before us. It is true the offense of the parents may not be so great in the one case as in the other, but this is a question to be deter-, mined by the legislative authority. It seems to us not to be against public policy, but a wise exercise of power to do this, and thereby that the brand of illegitimacy may be removed from the innocent offspring in the one case as in the'other. The fact that the degree of criminality of the parents is not to prejudice such offspring, we think is apparent from the whole section, for by the last clause it is provided that even where there has been a marriage between persons, absolutely null and void at law, as where the parties one or both were married at the time, or the marriage was incestuous it may be, and children of this null marriage are born to them, they are legitimate. This shows how solicitous and careful the legislature has been to protect the interests of such unfortunate children, and to make them legitimate —not to encourage the guilty, but to favor and restore the innocent; and the same considerations operate upon and influence courts, in cases where questions of this kind are presented. See 17 Ohio St. 448; Cope vs. Cope, 137 U. S. 682; 43 Ind. 516; 96 Cal. 532.
It is true that this section of our statutes is in derogation of the doctrine of the common law on this question, but we see no reason on this ground, for giving it an unreasonable construction or for introducing into it, provisions which the legislature in its wisdom, and in the exercise of its undoubted power has left out; and particularly is this so, when it would seem that the exception which it is sought to have en-grafted therein, would be in opposition to the general spirit of the statute as we understand it. And the fact that our statute, in some of its features, may have been taken from the civil law, which excepts from its operation children born of an adulterous intercourse of their parents, is not of weight *304 when- we remember that such exception is not brought into our law. If such had been the legislative intent in providing as to the question of subsequent legitimacy, why was such an exception not put into .the statute as was done in the Louisiana code and the code Napoleon,referred to by counsel for plaintiff in error? That it was not, seems to us a weighty reason for the conclusion, that no such exception to the general rule prescribed by it, was intended,
It is also true that tne fact that the supreme court of Kentucky, passing on their statute so similar to ours, held that it did not apply to the case of adulterous bastards, and that other judges or courts or law writers may have approved the same, is entitled to the careful consideration of a court passing upon the Ohio statute — not decisive of course as to the interpretation that should be placed upon it, but as the view taken of it by persons learned in the law, and-persuasive in its character.
It must be admitted that the decision in the Sams case referred to, clearly and distinctly holds that their statute, so like our own, ought not to receive the construction that it was intended by the legislature to include in its terms adulterous bastards, or to provide any way in which they might become legitimate. But we think that this ruling of •the court was based upon the ground, that in their view it would have been against good morals and public policy to so legislate, and that such intention should not be imputed to the legislature. We have already expressed our opinion upon this point, referring to Ohio cases with the view of showing that in a case like that before the court, this is not a proper method of arriving at the intention of the legislature, where the language used is broad enough to cover the case; and we think the decision of the same judge in another case reported in the same volume with the Sams case, Harris vs. Harris (85 Ky. 49), states the proper rule as to this. And if authority, additional to that from our own state *305 already cited, were needed, the decision of the Supreme Court of the United States in the case of Brewer vs. Blougher 14 Peters 178, in a case involving the right of children of an incestuous connection to inherit under the provisions of a statute which made illegitimate children capable of inheriting, and where it was claimed it could not apply to the issue of incestuous marriages is in point. The court in -the third paragraph of the syllabus, says: “It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statutes, and the subject matter to which it relates; and to restrain its operation within narrower limits than its words import, if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to include in it, According to the principles of the common law, an illegitimate child is filius nullius, and can have no father known to the law; and when the legislature speaks in general terms of children of that description, without making any exceptions, the court is bound to suppose they design to include the whole class.” And Chief Justice Taney in the opinion rendered, uses this language pertinent to this case —page 198: “To this extent, therefore, the right to inherit is given by this act of assembly, and it would appear to have been given upon the principle, that it is unjust to punish the offspring for the crime of the parents. The right of the children therefore is not made to depend upon the degree of guilt of which they were the offspring. All illegitimate children are the fruits of crime, differing indeed greatly in its degree of enormity. And the legislature, if it had seen proper to do so, might undoubtedly have made the right to the inheritance to depend upon the character of the offense committed by the parents. But they have used no language showing any such design. On the contrary, they appear to have looked at the unoffending character of the children, rather than at the criminal conduct of the parents of whom they are the offspring.”
*306 So far as we are advised the decision in the Kentucky case is the only one that sustains the claim of the plaintiff in error. It is urged that it was directly approved by Justice Brown in the Cope case (137 U. S. 685). But we think this was hardly the case. The. case before that court was not like this, and he same question was not presented or decided. The question there was as to the power of the legislature of the territory of Utah to pass a law providing that illegitimate children and their mothers inherit in like manner from the father, whether acknowledged by him or not, pro-' vided it shall be made to appear to the satisfaction of the court that he was the father of such illegitimate child or children;” and it was held to be valid, and in the decision Justice Brown says: “and if the question of parentage be satisfactorily settled, there would seem to be power in the legislature to endow even the children of an adulterous intercourse with heritable blood;” and then follows the language relied upon by counsel for plaintiff in error as approving the doctrine of the Sams case, viz: “Legislation admitting illegitimate children to the right of succession is undoubtedly in derogation of the common law, and should be strictly construed; and hence it has generally been held that laws permitting such children whose parents have since married to inherit, do no apply to the fruits of an adulterous intercourse. Sams vs. Sams, Exrs, 85 Ky. 396.” It will be noted that he makes no reference to any other case or authority in support of the statement, and it is a noticeable fact, too, that in the case thus referred to, the judge delivering the opinion does not cite any authority in support of his conclusion, nor does the counsel who were successful in that case. It seems to us that what is said can not be construed as an approval of the doctrine of the Sams case in any sense; and what is said by the Justice immediately following the passage quoted, is fully in line with the authorities herein before cited as to the duty of courts in construing *307 statutes. He says: “But while it is the duty of courts to put a construction upon statutes which shall so far as possible be consonant with good morals, we know of no legal principle which would authorize us to pronounce a statute of this kind, which is plain and unambiguous upon its face, void by reason of its failure to conform to our own standard of social and moral obligations. Legislatures are as competent as courts to deal with these subjects, and in fixing a standard of their own, are beyond our control.” And then he approvingly refers to the opinion of Chief Justice Taney on this point in 14 Peters, before given. In our opinion then the decision in the Sams case, is the only authority for such a holding.
On the other hand the view that a statute similar to our own, and as broad in its terms, embraces a case precisely similar to that before the court, and that the court in interpreting it is not at liberty to interpolate exceptions against the legitimacy of adulterine bastards was clearly upheld in the case of Hanbecker vs. Hanbecker, 43 Md. 576, and after-wards cited approvingly by the same court in the case of Scanlan vs. Walsh, 31 Atlantic Reporter 498. The same was done in the case of Blythe vs. Ayres, 96 California 532, and we quote from the language of the opinion in this last case, found on page 570: “A similar principle is applied to the- legitimacy of children by a subsequent marriage. The provisions of section 215,' (which provides that ‘a child born before wedlock becomes legitimate by the subsequent marriage of its parents’), w'ould operate upen and legitimate a child born of a father who at the time of its conception and birth was the husband of another woman, or would apply to an incestucus bastard. Such was expressly declared to be the law under a similar provision of a state statute in the case of Hanbecker vs. Hanbecker, 43 Md. 576, the court saying: “No doubt the legislature in thus mitigating the severe rule of the common law, intended to hold out *308 to the sinning parents an inducement to marry, and thus put a stop to the mischief of further illicit intercourse between them, but in our opinion the main purpose and intent-of the enactment we are now considering was io remove the taint and disability of bastardy from the unoffending children whenever their parents did marry, without regard to the deepness of guilt on the part of their parents in which they were conceived and born. Such a child under the common law would be deemed an adulterine or incestuous bastard, incapable of legitimation,and in the courts of certain countries where that law controls, would not be recognized as legitimate. ”
We think then that the weight of authority oiitside of the decisions of our own state is clearly with the defendant in error. The particular question has never been before the Supreme Court of this state, but in two cases it has adjudicated as to the construction to be placed upon the last clause of the statute under consideration (Section 4175), which provides that“theissuPof parents whose marriage is deemed null in law, shall nevertheless be legitimate.” Wright vs. Lore, 12 Ohio St. 619, and Morris vs. Williams, 39 Ohio St. 554, The court in these cases held substantially that the words used in the statute, must have a literal interpretation, and embraced cases coming within its language, and (in the last case), withoutany qualification on any supposed ground, that it could not have been the intention of the legislature to provide for legitimizing issue by a subsequent marriage of slave parents, who by the law of the place of the marriage, were incapable of contracting. Judge Okey says: “But we are unwilling to place any such limitation on the words of the statute. It is a familiar rule in the construction of statutes, that the language, where clear and comprehensive, is not to be limited in view of the particular instances which may be supposed to have lpd to its adoption, but the act should be held to embrace all cases coming fairly *309 within its terms, if they are also within its reason and spirit.” This also shows the view entertained by that court as to the mode in which the whole statute should be construed,
Kittrexlge & Withy, for Plaintiff.
Robert Ramsey, Joseph W. O’Hara and John Nichols for Defendant.
We have not deemed itjjneceesary to refer to all of the numerous authorities cited by opposing counsel.[ Many of them will be found in the decision of this case by Judge Kumler in the court of common pleas, reported in third Ohio Nisi Prius Reports, page 6,
The judgment of the court of common pleas will be affirmed.
Judge Swing is of the opinion that while this case comes within the letter of the^statute,'if is not within its spirit, and that such is the weight of authority, and dissents from the judgment of affirmance.

e