Burket, J.
While the court finds that Mr. Reasoner and Mrs. Reasoner were married at a certain time, and that she obtained a divorce from him at a certain time thereafter, there is no finding that he obtained a divorce from her ; and as in reviewing a judgment based upon a finding of facts, facts not found are regarded as],[not existing, this record must be construed as showing that Mrs. Reasoner was the wife of Mr. Reasoner at the time her daughter Margaret C. was begotten.
*413 The court finds in effect that the child, Margaret C., is the off-spring of Henry McNicoll, an unmarried man, and Mrs. Reasoner, a married woman. The child is, therefore, what is known as an adulterine bastard, begotten of an adulterous connection between a man and woman who at that time could not make a valid contract of marriage. The legal obstacle to their marriage was afterward removed by divorce obtained by her, and they were shortly thereafter legally married, and the child at once became a member of his family, and was recognized and acknowledged by him as his child up to the time of his death, and was so treated in his last will and testament. The child now claims that she was and is thereby legitimated under our statute, and entitled to one-half of the property devised by Peter McNicoll to Henry McNicoll for the term of his natural life, and at his decease to go to the heirs of his body; while Claribel Ives, the only child of Henry McNicoll begotten in lawful wedlock, claims that an adulterine bastard cannot becomé legitimated under our statute by the subsequent marriage of the parents, and that, therefore Margaret C. McNicoll has no interest in the property, and is not entitled to have partition thereof.
By the civil law, the law of Scotland and the Code Napoleon, an adulterine bastard could not become legitimated by the subsequent legal marriage of the parents. All bastards who were the off-spring of parents who might legally marry at the time of begetting such bastards might become legitimated by the subsequent marriage of the parents followed by an acknowledgment of the child by the father as being his child. Under the common law of England there could be no legiti *414 mating of bastards, whether adulterine or otherwise.
This was the state of the law in Europe as to legitimating bastards when our first statute on the subject was passed, February 22, 1805o 3 O. L., 281. Our statute of that date is a transcript of the statute of Virginia on the same subject, passed in 1785, and entitled “An act concerning the course of descents. ” 12 Hennings Statutes at Large, 139. The bill was drafted and reported by a committee of -which Thomas Jefferson was one, after some years of deliberation, and was adopted by the Virginia legislature, omitting the exception of the civil law and the law of Scotland as to adulterine bastards, and disregarding the common law of England which prevented all bastards from being legitimated.
The statute of Virginia did not follow nor adopt any of the European laws as to bastards, but enacted a new statute on the subject to be construed and enforced by reference to the words used in the statute itself, untrammeled by the rules of the civil law. The courts of Virginia, both before and after the adoption of our statute, construed the statute of that state as having abrogated the exception of the civil law as to adulterine bastards. Stones v. Keeling, 5 Call, 143; Browne v. Turberville, 2 Call, 390; Templeman v. Steptoe, 1 Munf., 339; Davis v. Rowe, 6 Rand., 355; Garland v. Harrison, 8 Leigh, 368. When we adopted in this stale the Virginia statute as to bastards, we adopted with the statute the construction placed upon it by the courts of Virginia, and at each re-enactment of the statute we acquiesced in the constructions up to that time placed upon the statute by the courts of Virginia, *415 no construction having in the meantime been placed upon the statute by our own courts, Favorite v. Booher's Admr., 17 Ohio St., 548.
As the exception as to adulterine bastards existed in the civil law and in the law of Scotland and was omitted from the Virginia statute, it must be presumed and held that such omission was intended, and that it was the purpose of the Virginia legislature to wipe out the exception as to adulterine bastards and to permit them to be legitimated the same as other bastards. When the legislature of this state adopted the Virginia statute in 1805 it was familiar not only with the Virginia statute, but also with the civil law, the law of Scotland, the common law of England and the Code Napoleon, and the omission of the exception as to adulterine bastards was not in ignorance of those laws, but was with the purpose of wiping out the exception, and doing justice to the innocent off-spring.
It is urged by counsel for plaintiff in error that while the words of our statute are broad enough to include adulterine bastards, the general assembly could not have intended to include them, because to do so would be against public policy, would disturb the general law protecting- the marriage relation, and lead to absurd consequences, and that married people should not be encouraged to forsake their marriage vows and cohabit with others in anticipation of a future marriage with a view of making their off-spring legitimate. And these considerations induced the decision .in the case of Sams v. Sams, 85 Ky., 396.
There can be no public policy in this state in conflict with a valid statute of the state. Public policy must always yield to a valid statute. The *416 general assembly has the power to enact a law legitimating adulterine bastards, and there would be no absurdity in so doing. Neither would such a statute disturb the general Jaw protecting the marriage relation nor the law of crimes and misdemeanors, nor the law as to public morals. The subject of marriage and divorce, and the subject of adultery and fornication, and the subject of public morals are all carefully provided for and protected by separate chapters and sections of our statutes, and if the general assembly desired to prevent adulterine bastards from becoming legitimated, some provision to that effect would be found in some of the statutes. No such provision is found, but on the contrary, section 4175, Revised Statutes, has been enacted as follows:
“When a man has by a woman one or more children, and afterward intermarries with her, such issue, if acknowledged by him as his child or children, shall be deemed legitimate; and the issue of parents whose marriage is deemed null in law, shall nevertheless be legitimate.”
The force and effect of this section begin after the sections as to marriage, divorce, adultery, fornication and public morals have expended their force. After marriage and divorce, and after prosecutions for adultery and fornication, and to protect public morals, there are often adulterine bastards existing whose parents have thereafter become legally married, and have recognized and acknowledged them as their children, and the purpose of our statute is to legitimate such children, and to permit them to inherit from the father as well as the mother. Thereby justice is done to the innocent off-spring without in any manner impinging upon the laws as to the marriage relation or as to *417 public morals. Those laws are allowed to have their full force and effect, and this statute as to bastards provides for a state of things e’xisting after the other statutes have been fully executed.,
Neither would such a statute encourage married persons to forsake their marriage vows and cohabit with others in anticipation of a future marriage with a view of thereby making their off-spring legitimate. The adulterous connection is not had with a view to subsequent marriage and legitimating children, but with a view to present pleasure; and the ardent hope and desire usually exists that no off-spring should result therefrom; and this section was enacted to enable parents when all impediments to a legal marriage should be removed, to intermarry and recognize and acknowledge their off-spring, and thereby in a measure atone for the sins of the past, and do justice to their innocent and unfortunate children. Viewed' in this light the statute is a righteous enactment. While to visit the sins of the parents upon the innocent and helpless off-spring would shock every sense of right and justice.
Again it is clear that after the birth of an adulterine bastard, all obstacles being removed, parents may legally marry and enjoy all the rights and privileges of marriage. They may inherit from each other under our statute, and to allow them to marry and enjoy all the fruits thereof and deprive their off-spring from inheriting from them would seem rank injustice; and it cannot be presumed, without clear words to that effect, that the legislature intended such an unjust result/ To so hold would be to reward the guilty parents, and punish the innocent off-springy
*418 That our statute was intended for the benefit and protection of the innocent off-spring, and not for their punishment on account of sins committed by their parents, is shown by the eases of Wright v. Lore, 12 Ohio St., 619; Morris v. Williams, 39 Ohio St., 554.
If the purpose of our law is to punish the bastard children for the errors of the parents, to be consistent, the children should be prevented from in. heriting from the mother as well as the father after the marriage of the parents. It is said that the mother is always known, but the father is not. But when the father marries the mother and recognizes and acknowledges the children as his own, he thereby makes himself known, and thereafter there is no more reason for denying inheritance to them from him than from the mother.
Again the weight of authority in this country is in favor of the defendant in error. Carroll v. Carroll, 20 Texas, 731; Hawbecker v. Hawbecker, 43 Md., 516; Blythe v. Ayres, 96 Cala., 532; Schouler on Domestic Relations, 226; Sutphin v. Cox, 1 Western Law Monthly, 346; 2 Dec. Re., 90.
Opposed to these authorities is the case of Sams v. Sams, 85 Ky., 396. That case is cited by Pingrey on the Law of Real Property, section 1113; by Ballard on the Law of Real Property, section 344; Cope v. Cope, 137 U. S., 682-685; Latin Maxims and Phrases, by John Trainer, 450; Rapalje & Lawrence’s Law Dictionary, 118, the Law of Persons and Property by Dwight, 257. The only adjudged case is Sams v. Sams, supra, and all the citations and references are to that case, and most of them refer to the case in language indicating a doubt as to its soundness.
*419 Again the language of the statute is too clear to require construction: ‘ ‘When a man has by a woman one or more children, and afterwards intermarries with her,” etc. A “man” means any man, anda “woman” means any woman. There are no exceptions. If he is a man and she is a woman, no matter what their previous lives may have been they come within the language of the statute, and when legally married and the former issue acknowledged by him as his child, such issue becomes thereby legitimated, even though it is an adulterine bastard. Take the case at bar. Mr. McNicoll was a man, Mrs. Reasoner was a woman. He had a child by her and afterwards intermarried with her and acknowledged the child as his child. The statute says that in such case the child shall be deemed legitimate. Nothing is said in the statute as to whether the parents could or could not legally marry at the time the child was begotten. The general assembly having attached no such condition, the courts can attach none, and to do so would be judicial legislation.

Judgment affirmed.