## Haggard, et al. v. Mason.

(Decided March 25, 1913.)

### Appeal from Casey Circuit Court.

1. Children—Born Before Marriage—When Legitimate.—If a man having had children by a woman afterwards marry her, and recognized them as his children, they became legitimate and under section 1398, Ky. Stats., capable of inheriting from him.

2. Deeds—Action to Set Aside on the Ground of Mental Incapacity and Undue Influence—Evidence—Sufficiency.—In an action to set aside a deed on the ground of mental incapacity and undue influence, evidence examined and held sufficient to show that for some time prior to the execution of the deed and at the time of its execution the grantor was mentally incompetent to understand the nature and effect of the conveyance, and that its execution was the result of undue influence exercised over him by his wife and children other than appellant, his only surviving child by a former marriage.

JAMES GARNETT, E. C. MOORE and N. H. W. AARON for appellants.

M. E. TARTAR, HAZELRIGG & HAZELRIGG for appellee.

Opinion of the Court by Judge Turner—Reversing.

A. C. Mason, aged seventy, died in April, 1911, a resident of Casey County. About two weeks before his death he conveyed to the appellee, Boyle Mason, a tract of land in that county which represented more than half in value of his total estate, and embraced the homestead where he died.

He left surviving him his widow, the appellee, Bell Mason, and Boyle Mason, Mack Mason, Kate Mason, Edna Mason and Louis Mason, all the children of Bell Mason, and the appellant, Cora Ann Haggard, his only surviving child by a former marriage.

This suit was instituted by appellant to set aside the deed made by him just before his death to the appellee, Boyle Mason, upon the ground of his incapacity at the time to know or understand its purport and effect, and upon the additional ground that Boyle Mason and his mother, Bell Mason, unduly, and wrongfully, and fraudulently influenced and over-persuaded him to execute the same.

Of the children of Bell Mason all but two were born out of lawful wedlock, but after the death of A. C. Mason's first wife; but the evidence is satisfactory that both before and after his marriage to Bell Mason he recognized each and all of them as his children, and, therefore, under section 1398 of the Kentucky Statutes they became legitimate, and were capable of inheriting from him. Sams v. Sams, 85 Ky., 396; Stein v. Stein, 32 Rep., 664.

We are confronted with only two questions:

1. Did A. C. Mason execute the deed when he had the mental capacity to know or understand the effect of the transaction?

2. Was he at the time unduly and wrongfully influenced and over-persuaded?

At the time of his death the decedent was about seventy years of age, and had been for some time prior thereto suffering from tuberculosis, and for some weeks before his death, had been confined to the house; some twenty-six years before his death he had been shot, and one of the shots had entered in or near his brain, and had affected him to such an extent as that he was never afterwards able to concentrate his thoughts or to command in his conversation the words which he desired to use.

The evidence is abundant by his physicians and others that never after the time of the shot was he regarded as a man mentally well balanced.

The deed to the appellee, Boyle Mason, was executed on the 12th day of April, 1911, and it appears from the testimony of one witness, who visited A. C. Mason on the 11th day of April, 1911, for the purpose of discussing some business matter with him, that he found him in such condition on that day as that he declined to bring up or discuss the business matter, for the reason that he was both mentally and physically incapable of transacting any business.

The whole evidence is conclusive that the strength of his mind had been seriously impaired ever since he received the gun shot wound, it appearing from the testimony of several witnesses that his conversation was scattering and incoherent, and that he could not concentrate his mind on any one subject for long at a time, and could not follow any given line of conversation, but would jump irrationally from one subject to another.

It is shown by the testimony of the mail carrier on his route that A. C. Mason, whom he saw every day, would, day after day, ply him with the same questions, although he had possibly the day before, and scores of time previously, answered the same questions from him.

It appears that the appellee, Boyle Mason, shortly before his father's death, was living in Tennessee, and when the family was informed by the physician the latter part of March or the first of April, that he could live only a short time, they sent a telegram to Boyle Mason, and he thereafter shortly came home; that within a few days after he reached home, he went to the county seat and at his suggestion the county clerk or his deputy prepared the deed in question, and that a day or two thereafter it was executed by A. C. Mason and his wife, the mother of said Boyle Mason.

As against all this evidence of incapacity and all these suspicious circumstances of undue influence, we have only the statement that A. C. Mason for several years before his death exercised a certain shrewdness in his little dealings at the stores where he traded, and in certain small trades or transactions with other persons.

As might be expected, there was some feeling between appellant, Cora Ann Haggard, his only daughter by his first marriage, and the appellee, Bell Mason, and her

children; and it does not require a wide stretch of imagination to see the incentive that dwelt in the bosom of Bell Mason and her children to have the old man make such disposition of his property as would practically deprive appellant of any interest therein.

The direct evidence of A. C. Mason's incapacity, strengthened by the uncontroverted facts and circumstances surrounding the whole transaction is most convincing, not only that he was weakened mentally and physically by the ravages of a wasting disease, and by the consequences of an unfortunate accident, and consequently was mentally incompetent to understand the nature and effect of the conveyance which he executed; but also that he was at the time in a great measure under the control and domination of his wife and children other than appellant. In view of the confidential relations existing between Bell and Boyle Mason and the decedent; the well known antipathy of the two former to appellant, and the other incentives which they had to shut her out from participation in her father's estate; the weakened mental and physical condition of the decedent by disease and misfortune; the significant fact that Bell Mason and her other children have joined Boyle Mason in his effort to uphold this deed, which, unless there be some secret understanding between them, not only deprives them of their interests in A. C. Mason's estate to a great extent, but actually takes from them the only house which he left fit for human habitation, equity will indulge a strong presumption of undue influence. Shacklette v. Goodall, 151 Ky., 21.

The judgment is reversed with directions to set aside the conveyance.