OF THE

## STATE OF MISSOURI

. AT THE

### APRIL TERM, 1915.

(*Continued from Vol. 265.*)

HERMAN DRAKE et al., Appellants, v. MILTON
HOSPITAL ASSOCIATION et al.

**Division Two, July 17, 1915.**

1. LEGITIMATION: Adulterine Bastard.  The statute contemplates the legitimation of adulterine bastards the same as it does other children born out of lawful wedlock whose parents subsequently marry.

2. ———: ———: Recognition: Presumption.  The marriage, after emancipation, of a man to a woman who while she was a slave gave birth to an illegitimate child, and the subsequent recognition of such child by him as his own, there being evidence that they lived in the same community and none that he did not have opportunity to become the father of such child, although at the time of its birth another woman was his slave wife, raises the presumption that he was the child's father; and if that presumption is not overcome by evidence showing him to have been impotent or otherwise incapacitated to become a father at and prior to the child's birth, such·child is to be held legitimate, the same as one born in lawful wedlock.

266 Mo.]                     (1)

3. ————: ————: **Presumption: Impotency: Instruction.** The presumption that a child born in wedlock is legitimate is not an absolute one, but is rebuttable. Likewise, the presumption that a man who marries the mother of an adulterine bastard and subsequently recognizes such child as his own, was its father, is also rebuttable. And where there is testimony tending to show that at and prior to the child's birth he was impotent, an instruction declaring that he is presumed to have been the child's father from the fact of his marriage of the mother and his subsequent recognition of her illegitimate child as his own, is error, since it ignores and omits any reference to the evidence tending to overcome that presumption.

4. ————: ————: ————: **Evidence of Impotency.** Testimony that the putative father of the illegitimate child had mumps before he knew the child's mother, which he said rendered him impotent through life, and that his scrotum after his death was gone, is evidence tending to establish his impotency.

Appeal from Cole Circuit Court.—*Hon. John M. Williams*, Judge.

REVERSED AND REMANDED.

*J. G. Slate, John M. Dawson* and *Alex. Z. Patterson* for appellants.

(1) The court erred in finding for respondents because there was no evidence that Archie Drake was the natural father of Ida Garnett, who claims to inherit from him by reason of the law of descent and distribution, but the evidence was to the contrary. Sec. 341, R. S. 1909; Mooney v. Mooney, 244 Mo. 390; Rockingham v. Mount Holly, 26 Vt. 653; 5 Cyc. 632, 633, 634. (2) The court erred in finding for respondents because no testimony was offered but what was entirely consistent with the theory that respondent, Ida Garnett, was not the child of Archie Drake. The burden of proof was on respondents. 5 Cyc. 628; Pickens' Estate, 163 Pa. St. 14; Mooney v. Mooney, 244 Mo. 390. Respondents' testimony in support of the claim of paternity was utterly lacking in the essential requirements of clearness, certainty and convincing

force.  Facts cannot be regarded as proved by evidence merely giving rise to conjecture.  Newcomb v. Jones, 37 Mo. App. 475; Warner v. Crandall, 65 Ill. 195; Wheelan v. Railroad, 85 Iowa, 167; Wilson v. Cobb, 28 N. J. Eq. 177; O'Connell v. Clark, 78 N. Y. Supp. 93; Land Co. v. Lumber Co., 35 S. W. (Tenn.) 886; Steamship Co. v. Kelly, 126 Fed. 610.  (3)  The court erred in finding for the respondents because the evidence was uncontradicted that Archie Drake was married to his first wife long before the respondent, Ida Garnett, was begotten and born, and that he continued to live and cohabit with said first wife until she died in 1870, and that said respondent, Ida Garnett, was begotten during the time he was living with his first wife, to-wit: begotten in 1860 and born in March, 1861.  Sams v. Sams, 85 Ky. 396; Kealoha v. Castle, 210 U. S. 149; Hall v. Hall, 26 Ky. L. R. 610; Tiffany, Persons & Domestic Relations (2 Ed.), p. 235.  (4) The court erred in finding for respondents because there was no evidence that Archie Drake and the mother of the respondent, Ida Garnett, were even acquainted at the time respondent was begotten and born. (5)  The court erred in giving declaration of law numbered 4, at the instance of respondents, for the reason that this declaration in effect declares the law to be that no matter who was actually and in fact the father of respondent, Ida Garnett, if Archie Drake afterwards married said respondent's mother and recognized said respondent as his child, that is, held her out to the world as his child, respondent thereby became, in law, Archie Drake's child.  This declaration ignored the opening words of Sec. 341, R. S. 1909, to-wit: "If a man, having by a woman a child," etc.  Mooney v. Mooney, 244 Mo. 390.  (6)  The court erred in indulging the presumption that Archie Drake's intermarriage with Julia Smith and subsequent alleged recognition of respondent, Ida Garnett, as his daughter, was either persuasive or conclusive proof that

Archie Drake was in fact the father of Ida Garnett. In so doing the court disregarded one of the strongest presumptions known to the law and one which the law ever makes; that is, the presumption of innocence, which applies to civil as well as criminal actions. Archie Drake was a married man at the time Ida Garnett was conceived and born and in law he must be presumed to be innocent of the criminal offense of adultery, until the contrary is shown by competent testimony. Klein v. Laudman, 29 Mo. 259; Johnson v. Railroad, 203 Mo. 381; Maier v. Brock, 222 Mo. 74; 16 Cyc. 1081; Childs v. Merrill, 66 Vt. 302.

*Pope & Lohman* and *Irwin & Peters* for respondents.

Respondents cite the following authorities in support of their position, from this State and other jurisdictions having statutes similar to ours in regard to legitimating children born before marriage of parents: R. S. 1909, sec. 341; Gates v. Seibert, 157 Mo. 271; Breidenstein v. Bertram, 198 Mo. 347; Nelson v. Jones, 245 Mo. 579; Jackson v. Phalen, 237 Mo. 142; Martin v. Martin, 250 Mo. 549; Adger v. Ackerman, 115 Fed. 124; Mooney v. Mooney, 244 Mo. 372; Kealoha v. Castle, 210 U. S. 149; Brewer v. Blougher, 14 Pet. 178; Hawbecker v. Hawbecker, 43 Md. 516; Ives v. McNicoll, 59 Ohio St. 402; Carroll v. Carroll, 20 Tex. 732; Munson v. Palmer, 8 Allen, 551; Adams v. Adams, 36 Ga. 236; State v. Lavin, 80 Iowa, 556; Stein v. Stein, 106 S. W. 861; Rockingham v. Mount Holly, 26 Vt. 653, 1 L. R. A. (N. S.) 773; Harvey v. Ball, 32 Ind. 98; Bailey v. Boyd, 59 Ind. 292; Binns v. Dazey, 147 Ind. 536; Alston v. Alston, 86 N. W. 55; Brown v. L. of H., 107 Iowa, 439; Hunter v. Whitworth, 9 Ala. 965; Dannilli v. Dannilli, 67 Ky. 51; Colwell's Succession, 34 La. Ann. 265; Hart v. Ross, 26 La. Ann. 90; Brewer v. Hamor, 83 Me. 251; Adams v. Adams, 154 Mass.

290; In re Oliver, 184 Pa. St. 306; McGunnigle v. Mc-Kee, 77 Pa. St. 81; Adams Estate, 6 Pa. Co. Ct. 591; In re Mathias, 63 Fed. 523; 5 Cyc. 634; VanHorn v. VanHorn, 107 Iowa, 247; Miller v. Pennington, 218 Ill. 220; Scanlon v. Walshe, 81 Md. 118; Eddie v. Eddie, 8 N. D. 376; In re Gird's Estate, 157 Cal. 534; Blythe v. Ayres, 96 Cal. 532; Allison v. Bryan, 21 Okla. 557. Children born before the marriage of their parents, who afterwards intermarry, although the father may have a living wife or been laboring under some other disability, are legitimated by the marriage, after the disability was removed, and recognition thereafter. Miller v. Pennington, 218 Ill. 220; Carroll v. Carroll, 20 Tex. 732; Brewer v. Blougher, 14 Pet. 178; Hawbecker v. Hawbecker, 43 Md. 516; Ives v. McNicoll, 59 Ohio St. 402; Adams v. Adams, 36 Ga. 236; Scanlon v. Walshe, 81 Md. 118; Eddie v. Eddie, 8 N. D. 376. The intermarriage, after the birth of the child, and the husband's acknowledgment that the child was his, are prima-facie evidence that he was the actual father, and entitles the child to a pension if the father dies and the mother remarries. U. S. v. Skam, 5 Crank C. C. (U. S.) 367. Laws should be liberally construed in favor of legitimacy. State v. Lavin, 80 Iowa, 561; Rockingham v. Mount Holly, 26 Vt. 653; Brewer v. Hamor, 83 Me. 251; Adams v. Adams, 154 Mass. 290.

ROY, C.—This is an ejectment suit for land in Jefferson City. Defendant had judgment, and plaintiffs have appealed.

Archie Drake died intestate in 1907 seized of the land. The plaintiffs are his collateral kin, residents of Virginia, where Archie was born a slave. Defendant Ida Lee Garnett claims the land as the only child of Archie Drake. The other defendants are in possession as her tenants. Archie Drake was brought by his owner to Jefferson City before the Civil War and lived there the remainder of his life. He had a slave wife

several years before the war. Her name was.Betsy, and they lived together until her death about 1870. They had no children. A few months after Betsy's death he married Julia Smith, who was then the mother of an illegitimate child about nine years old, known up to that time as Ida Lee Smith, now the defendant Ida Lee Garnett.

One witness, John Barnes, testified for defendants that Archie, before his marriage with Julia, called Ida his daughter. Witnesses for plaintiffs testified that he denied that he was the father of Ida, and one witness stated that he said that Ida was the child of her mother's old master. There was much gossip to the same effect.

The undisputed evidence shows that after the marriage of Archie and Julia, Ida became a member of their family and remained such until her marriage to James H. Garnett in 1888. She was known in the family and elsewhere as Ida Lee Drake. By that name she was enrolled in, and graduated from, Lincoln Institute, and enrolled in Oberlin College. In that name she was baptized, and later given in marriage by Archie Drake at his home, the wedding being described as a "fine lay out." Archie Drake from the time of his marriage with her mother treated Ida as his child and called her "daughter." One witness stated that he said she was his daughter "by blood." He had no other children. Some of the witnesses for plaintiff stated that he said that he had the mumps when young and that it made him so that he could not become the father of children. One witness stated that he saw him after he was dead and that his scrotum was gone. The undertaker who had charge of his funeral testified that he saw nothing abnormal in his appearance in that respect. It was stated by some of plaintiffs' witnesses that his ordinary appearance and voice were those of a normal unemasculated man. There was no direct evidence that Archie Drake and Julia

were acquainted with each other at the time of Ida's birth. The trial was before the court sitting as a jury, and the issues were at law and not in equity.

The court at the instance of the defendants gave the following declaration of law, over the objection of plaintiffs:

"4. The court further declares the law to be that if Ida Drake, now Garnett, was the illegitimate child of Julia Smith, and that the said Julia Smith afterwards intermarried with Archie Drake, and that the said Archie Drake took the said Ida into his home, supported her, educated her, held her out as his own child, introduced her into society as his child and recognized her as his child, then in that event the law presumes that she was the child of Archie Drake."

I. Appellants say that as Archie Drake was the husband of Betsy when Julia's child, Ida, was begotten, his subsequent marriage to Julia and recognition of Ida as his child did not render Ida legitimate. They say that, under such circumstances, Ida was an adulterine bastard and incapable of legitimation under the civil law, the law of Scotland, the Code Napoleon and the common law; and that our statute should not be construed to have an effect not permitted under those laws. They cite Sams v. Sams' Admr., 85 Ky. 396. That was a case involving the same kind of a statute as ours, and the child was an adulterine bastard as here. It was held that the statute did not contemplate such a case and that the child was not legitimated by the subsequent marriage of her parents and the father's recognition of her as his child. The court said: "To construe the statute by its letter in this case would not only conflict with the legislative intent, but would encourage the faithless husband to pursue his immoral practices, and invite his concubine to terminate by intrigue, and perhaps crime, the existence of the marital relation."

*Legitimation of Adulterine Bastards.*

In Hawbecker v. Hawbecker, 43 Md. 516, a married man became the father of several children by a woman other than his wife. Subsequently his wife died and he married the mother of the illegitimate children and acknowledged them as his. The statute of that state was in substance the same as ours. In opposition to the claims of legitimacy by those children under that statute, it was urged that such statute was borrowed from the civil law, and that under that law adulterine bastards could not inherit for various reasons of public policy therein stated. The court in that case, l. c. 519, answering such objections, said: "But it must be a very clear case of intent to justify a departure from the words of the law. It would be dangerous and un-warrantable for a court to grope for an intent, or to make one from their own ideas of policy and morals, and on that ground, say that a particular case is with-drawn from the operation of the plain and unambiguous language of a statute."

Ives v. McNicoll, 59 Ohio St. 402, involved the question of the legitimacy of a child of a married woman by a man other than her husband, the mother having been subsequently divorced from her first husband and having married the father of the child. The statute of that state was in effect the same as here. The court said that it was the intention of the statute to abolish the rule of the civil law, the law of Scotland and the Code Napoleon against adulterine bastards and to do justice to the innocent off-spring. It was there said:

"There can be no public policy in this State in conflict with a valid statute of the State. Public policy must always yield to a valid statute. The General Assembly has the power to enact a law legitimating adulterine bastards, and there would be no absurdity in so doing. Neither would such a statute disturb the general law protecting the marriage relation nor the law of crimes and misdemeanors, nor the law as to

public morals. The subject of marriage and divorce, and the subject of adultery and fornication, and the subject of public morals are all carefully provided for and protected by separate chapters and sections of our statutes, and if the General Assembly desired to prevent adulterine bastards from becoming legitimated, some provision to that effect would be found in some of the statutes.''

Our attention is called to Kealoha v. Castle, 210 U. S. 149. That case originated in Hawaii. Their statute reads: ''All children born out of wedlock are hereby declared legitimate on the marriage of the parents with each other, and are entitled to the same rights as those born in wedlock.'' It was held that, as the court of last resort of Hawaii in a previous case had decided that an adulterine bastard could not be legitimated by that statute, it was proper to follow that decision in a case coming from Hawaii. That case expressly disclaims any ruling as to a case originating elsewhere than in those islands.

In our opinion our statute is so clear and authoritative that no place is left for judicial limitation of its terms. That statute contemplates the legitimation of adulterine bastards the same as others.

II. Appellants say that the court erred in giving the fourth declaration of law for the defendants, which, in effect, says that if Archie Davis, after his marriage with Julia, recognized Ida as his

**Instruction.**   child, then the law presumes that she is his child.

In Adger v. Ackerman, 115 Fed. 124, decided in the Circuit Court of Appeals of the Eighth Circuit, Judge Thayer, in a concurring opinion, said: ''In the present case it is not necessary to adopt the extreme view that recognition of an illegitimate child by a man who has married its mother is conclusive proof of paternity which no evidence can overturn, and

hence that the legitimacy of a child born out of wedlock, if it is recognized, by force of the statute is placed on a firmer foundation than the legitimacy of a child born in lawful wedlock, and no decisive opinion need be expressed on that point. I think that it is true, however, that by the recognition of a child born out of wedlock, under the circumstances aforesaid, such a child is placed in the same favorable position as one born during wedlock; that it can only be rendered a bastard, after such recognition, by the same kind of proof which is required to overturn the legitimacy of a child born in the course of wedlock; and that it is entitled to the benefit of the same presumptions.'' That language was approved by Fox, J., in Breidenstein v. Bertram, 198 Mo. l. c. 347.

After the marriage of Julia and Drake and after his recognition of Ida as his child, she stood in the same position as a child born in lawful wedlock.

Lawson on Presumptive Evidence, page 143, says: ''In Hargrave v. Hargrave, 9 Beav. 552, Lord LANG-DALE laid it down that the presumption that a child born of a married woman is legitimate may be rebutted by showing that the husband was: (1) Incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must in the course of nature have been begotten; (4) only present under circumstances affording clear and satisfactory proof that there was no sexual intercourse. And in answer to the House of Lords the judges laid down the rule thus: Where a child is born in lawful wedlock, the husband not being separated from his wife by a sentence of divorce, sexual intercourse is presumed to have taken place between the husband and wife, until the presumption is encountered by such evidence as proves to the satisfaction of those who are to decide the question that such sexual intercourse did not take place at any time when by such intercourse the hus-

band could, according to the laws of nature, be the father of the child.''

While there is no direct evidence in the case that Archie Drake and Julia were acquainted with each other at the time that Ida was begotten, yet they both lived at that time in or near Jefferson City, and there is no evidence in the cause tending to show that he did not have the opportunity to become the father of Ida. In other words, there is no evidence of non-access. On the other hand, there is evidence as to Archie Drake's impotency. The fourth declaration of law above mentioned improperly ignored that evidence. There should have been added to it the following ''unless the court finds from the evidence that at the time said Ida was begotten Archie Drake was physically incapable of begetting a child.''

The presumption that a child born in wedlock is legitimate is not an absolute one, but is rebuttable. It is overcome by proof of impotency on the part of the husband. The failure to submit that issue by the declaration of law above mentioned shows that the trial court did not consider the evidence on the question of impotency. We express no opinion on the weight of that evidence, but hold that it is the duty of the court or jury trying the case to consider that evidence.

The judgment is reversed, and the cause remanded. *Williams, C.,* concurs.

PER. CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.