CASE 44.—PROSECUTION AGAINST THE HERALD PUBLISHING CO., THE LOUISVILLE TIMES CO., AND THE EVENING POST CO. FOR SELLING OBSCENE NEWSPAPERS.—March 13.

## Commonwealth v. Herald Pub. Co.
## Same v. Louisville Times Co.
## Same v. Evening Post Co.

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

These cases consolidated on appeal; Defendants acquitted, Commonwealth appeals—Affirmed.

1.  Statutes—Construction—Two Acts Construed Together.—Act Jan. 27, 1894, sections 1, 2 (Laws 1894, p. 3, c. 2; Ky. St. 1903, sections 1352, 1353), relating to the selling or giving away of obscene newspapers or any printed matter of an

indecent character or reports of crime, mentions numerous acts of that nature, but does not declare them unlawful nor provide a penalty. Act March 19, 1894 (Laws 1894, p. 198, c. 85), amended Act Jan. 27, 1894, section 3 (Laws 1894, p. 4, c. 2; Ky. St. 1903, section 1354), so as to provide a penalty for the violation of sections 1 and 2. Held, that the two acts should be read together, thus declaring the acts prohibited and the penalty.

2. Same—Supplying. Omitted Words.—Though Ky. St. 1903, section 1352, relating to the selling of obscene or indecent newspapers, books, etc., is technically defective because it merely mentions acts of that character without prohibiting them or providing a penalty, it will not be allowed to fail because of the omission of the words "it shall be unlawful for" at the beginning of the section, or the words "shall be guilty of an offense" at the end, where there can be no reasonable doubt of the legislative intention to make it unlawful to commit the acts mentioned and to prohibit any one from doing them, since, where it is apparent from a reading of a statute that the omission of words or their insertion on the wrong place was merely an error or omission, words may be inserted and expression modified for the purpose of carrying out the legislative intent.

3. Obscenity — Publication — Newspapers. — However clean and pure the matter contained in a newspaper may generally be, yet, if it should in a single issue print an indecent or filthy article, it would be subject to indictment under Ky. St. 1903, section 1352, prohibiting the sale of obscene newspapers.

4. Same—Application of Statute.—In determining whether a publication comes within the ban of a statute prohibiting the publication of obscene, lewd, and scandalous matter, the same strict rule should not be applied to daily newspapers established for the purpose of publishing the news of the day, as to printed publications in the form of books or pamphlets that are wholly or in greater part devoted to the treatment of subjects that are lewd and scandalous, or to single or isolated articles designed to bring before the public the details of some indecent transaction.

5. Same.—A newspaper publication of part of the testimony in a criminal prosecution held not to be obscene, lewd, filthy, indecent, and disgusting within Ky. St. 1903, section 1352, prohibiting the selling and offering for sale of an obscene, lewd, filthy, indecent, and disgusting newspaper, etc.

H. W. RIVES, N. B. HAYS, Att'y Gen'l, R. L. DURHAM and C. H. MORRIS for appellant.

## POINTS AND AUTHORITIES CITED.

1. In an indictment against a corporation for an act that is equally unlawful whether committed by a corporation or a natural person, it is not necessary to allege corporate existence, but sufficient to charge defendant by name. (Halbert v. Skyles, 1 A. K. Mar., 368; Commercial Bank of New Orleans v. Newport Manufacturing Company, 1 B. Mon., 13; Henderson and Nashville R. R. Co. v. Leavell, 16 B. Mon., 358; Note—35 Am. St. Rep., 291.)

2. In considering a statute, if the will of the legislature can be clearly ascertained, such a construction will be given as will promote the harmonious operation of the law as a whole, even though the grammatical sense of the words must be modified, clerical errors corrected, some words rejected and others substituted. And all parts of the statute, including amendments, will be read as one declaration of legislative will, and be considered in connection with other statutes, in pari materia. (Commonwealth v. Grinstead, 55 S. W., 720; Bird v. Kenton County, 95 Ky., 195; Maysville, etc. R. Co. v. Herrick, 13 Bush, 123; 26 Am. and Eng. Ency. of Law, 602-604, 612, 616, 620, 653-655, 659, 712.)

3. Section 1352 of the Kentucky Statutes, forbidding obscene and indecent publications, is valid and enforceable, under the rule above cited, when read in connection with secs. 1351, 1353, 1354, and 979, Ky. Statutes.

4. Sec. 3839, U. S. Rev. Statutes, describing non-mailable matter, and sec. 1352 Ky. Statutes, denounce the same kind of publications, being confined to matter that is obscene or indecent (the words signifying that form of immorality which has relation to sexual impurity), and were designated to protect decency, purity and chastity in social life. A single obscene article will bring a paper within this statute. (Swearingen v. U. S., 151 U. S., 446; L. Ed. Book 40, p. 765; Lew Rosen v. U. S., 161, U. S.—— L. Ed. Book 40, p. 606.)

5. Secs. 1351 and 1353, Ky. Statutes apply to criminal news, police reports, etc., and accounts of crimes, when collected or massed in one publication to such extent as to constitute the chief feature of the paper, or to show that it is devoted to the dissemination of such news. They were not intended to prevent an occasional account of a crime committed, or even continual publications of such news, merely incidental to the general contents and make up of the paper—because criminal news may be demoralizing unless dealt out in large doses, while obscene or

Commonwealth v. Herald Pub. Co. .

indecent matter is always unlawful.

6. Similar statutes have been construed and enforced in other states, and are not violative of any constitutional rights. (People v. Muller, (N. Y.) 48 Am. Rep., 635; State v. Van Wye, (Mo.) 58 Am. St. Rep. 627; State v. McKee, (Conn.) 84 Am. St. Rep. 124.)

7. Obscene or indecent language, whether, printed, or publicly uttered, was indictable and punishable at common law, and statutes similar to sec. 1352 Ky. Statutes, are but declaratory of the common law (State v. Appling, (Mo.) 69 Am. Dec. 469), and an indictment not good under the statute, though concluding "contra formam Statuti," will be upheld if the acts charged constitute an offense at common law. (Ibid. and Gregory v. Commonwealth (32 Ky.), 2 Dana, 417.)

8. Where the only punishment that could be imposed on conviction for misdemeanor, is a fine, because of the fact that the defendant is a corporation, even though the statute in its terms prescribes fine or imprisonment or both, a judgment of acquittal of the corporation may be reversed on appeal. (Commonwealth v. L. & N. R. R. Co., 17 Ky. Law Rep., 563; Criminal Code, secs. 347, 352.)

HELM & HELM for appellee Evening Post Co.

BERNARD FLEXNER and W. M. SMITH for Herald Pub. Co.

C. C. McCHORD for Times Co.

POINTS AND AUTHORITIES.

1. Kentucky Statutes, secs. 1351, 1352, 1353, do not apply to publications such as are complained of in the indictments. (People v. Meuller, 96 N. Y., 408, 48 Am. Rep., 635; State v Applig, 50 Miss., 315, 69 Am. Dec., 459; Rosen v. U. S., 29; Swearingen v. U. S., 161 U. S., 446; Montrauss v. State, 72 Ga., 261, sc. 53 Am. Rep., 480; U. S. v. Harmon, 43 Fed., 414.)

2. The matter complained of was for the information of the public. Public policy demands that the public shall be advised of what occurs in courts of justice and no cause of action arises out of a fair report of the proceedings in a court of justice. (Besier v. Scripps-McRae Pub. Co., 113 Ky., 389; Stewart v. Hall, 83 Ky., 375; Am. Cyc. of Law, vol. 18, p. 1043; Register Newspaper Co. v. Stone, 31 Ky. Law Rep., 458.)

3. The indictment against the Herald Publishing Co. is fatally defective. (Criminal Code, secs. 122, 124; Thompson on Corpo-

rations, vol. 5, sec. 6436; Cyc., vol. 10, p. 1231; Com. v. C., N. O. & T. P. R. R., 6 Ky. Law Rep., 306; Nichols v. Bardwell, 105 Ky., 172; Brooksville v. Bryon, 20 Ky. Law Rep., 1941; Ky. Stat., secs. 539, 542, 576, 540, 1627, 1624; Robertson's Crim. Law, vol. 2, sec. 930; Ellison v. Commonwealth, 6 Ky. Law Rep., 306; Commonwealth v. Adair, 6 Ky. Law Rep., 306; Commonwealth v. Neyrick, 6 Ky. Law Rep., 530; Herald Publishing Co. v. Com., 28 Ky. Law Rep., 1253; Archibald Crim. Law, vol. 1, p. 47; Standard Oil Co. v. Commonwealth, 29 Ky. Law Rep., 5.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These three appeals, involving the same question of law, will be heard together. The appellees, publishers of newspapers in the city of Louisville, were indicted for printing in their respective newspapers parts of the testimony in the notorious Thaw trial which was in progress in New York at the time. In each of the indictments the charge was that the publishing company was guilty of the offense of "selling, and offering for sale and distribution an obscene, lewd, filthy, indecent, and disgusting newspaper, and printed matter of an indecent character, committed in manner and form as follows, to wit: The said company in the said county of Marion and on the ———— day of February, A. D. 1907, did wilfully and unlawfully sell, offer for sale and distribute a newspaper called the ————, which then and there contained on the first page thereof, in large type, the following matter: * * * The said newspaper and the said printed matter was at the time obscene, lewd, filthy, indecent, and disgusting, and was sold and offered for sale and distribution at the time and place and in the manner aforesaid, contrary to the statutes in such cases made and provided and against the peace and dignity of the Commonwealth of Kentucky." In the body of

each indictment there was set out in full the alleged obscene, lewd, and indecent matter, which was, in substance, a part of Mrs. Thaw's evidence on the trial of her husband, describing the manner in which. Stanford White drugged and seduced her.

The material part of the publications were as follows:

In the Louisville Herald: "Don't scream so. It is all over. It is all right. And this was Stanford White?' The question came from Delmas, now conducting the defense of Harry Thaw. 'Yes, sir.' * * * She then described her awakening in the mirrored room. She screamed, she said, and White urged her to be quiet. Later he took her home, and she sat up all night crying. 'Where was Mr. White when you recovered consciousness?' 'He was on the bed undressed.' 'What did he say afterwards?' He made me swear that I would never tell my mother about it. He said there was no use in talking, and the greatest thing in the world was not to get found out.' "

In the Evening Post: "Drugged by White and young life blighted,' says Evelyn Thaw with tears in her eyes. * * * 'This night when I got to Mr. White's studio in Twenty-fourth street, there was not anybody there. Mr. White said: "Well, well, they all seem to have turned us down." He said: "Never mind, we would eat alone." Later I said I must go home. He said he wanted to show me another part of the house, and we went into a bedroom with mirrors all around. He gave me more champagne. Then everything became whirly and black. When I came to my clothes were all off. I screamed and screamed, but he kept telling me to stop, saying: "It's over. It's all right." ' "

In the Louisville Times: "Evelyn Nebsit Thaw, from Witness Stand, Tells How White Decoyed, Drugged and Despoiled Her. * * * 'A few moments after I had drank it, there began a thumping and a pounding in my ears, and the room got all black.' Mrs. Thaw was almost in tears at this statement. 'When I awoke, my clothes had all been taken off me. I started to scream. Mr. White got up and threw a kimona over me. As I sat up I saw mirrors all around the bed. I began to scream again, and Mr. White asked me to keep quiet, saying that it was all over. When he threw the kimona over me, he left the room. I screamed harder than ever. I don't remember how I got my clothes on. He took me home, and I sat up all night crying.' 'Where was Mr. White when you recovered consciousness?' 'He was on the bed beside me undressed.' 'What did he say afterwards?' 'He made me swear that I would never tell my mother about it. He said there was no use in talking, and the greatest thing in the world was not to get found out.' "

Demurrers were entered to each indictment, and the only question to be considered on this appeal is the correctness of the ruling of the lower court in sustaining the demurrers.

The indictments were found under section 1352 of the Kentucky Statutes for 1903, providing as follows: "Any person or corporation who sells, lends, gives away or shows, or offers to sell, give away or show, or has in his possession with intent to sell, lend, or give away or to show, or advertise in any manner, or who otherwise offers for loan, gift, sale or distribution any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper, picture, drawing, photo-

graph, picture or image, or any written or printed matter of an indecent character, or any article or instrument of indecent or immoral use, or purporting to be for indecent or immoral use or purpose, or who designs, copies, draws, photographs, prints, utters, publishes, or in any manner manufactures or prepares any such book, picture, drawing, magazine, newspaper, pamphlet, story paper, writing, paper, photograph, image, matter, article or thing, or who writes, prints, publishes, or utters, or causes to be written, printed, published or uttered, any advertisement or notice of any kind, giving information directly or indirectly stating, or purporting so to do, where, how, of whom, or by what means any, or what purports to be any, obscene, lewd, filthy, indecent or disgusting book, picture, writing, paper, photograph, image, matter, article or thing, named in this section can be purchased, obtained or had."

In support of the ruling of the lower court, it is argued in behalf of appellees: First, that the article complained of as set out in the indictment does not contain matter which comes within the condemnation of the statute; and, second, that the statute fails to declare an offense ,and is too uncertain and indefinite to sustain a prosecution under it.

We will take up first the latter proposition. Section 1354 of the Kentucky Statutes for 1903 provides that: "Any person or corporation who is guilty of a violation of sections 1352, 1353, or either of them. * * * shall be sentenced to not less than ten days nor more than one year's imprisonment, or be fined not less than fifty nor more than one thousand dollars, or both fined and imprisoned, for each offense." Sec. 1352 and 1353 of the Kentucky Statutes are sections 1 and 2 of an act approved January 27, 1894 (Laws 1894,

p. 3, c. 2). The act did not provide any punishment
for a violation of these sections, but afterwards, by
an act approved March 19, 1894, section 3 of the act
of January 27th (Laws 1894, p. 198, c. 85), which is
now section 1354 of the Kentucky Statutes, was
amended, so as to provide a penalty for the violation
of sections 1 and 2 of the act. The acts of January
27th and March 19th must be read together, and, when
so considered and fairly construed, they not only de-
clare what publications shall be prohibited, but pro-
vide a penalty. Section 1352 is said to be meaningless
and uncertain, because there is contained in it no
prohibition against the things mentioned in the sec-
tion, nor is it declared that it shall be unlawful to
do them. In the respects mentioned, the section is
technically defective, but there can be no reasonable
doubt that it was the intention of the Legislature to
make it unlawful to commit the acts mentioned and
to prohibit any person or corporation from doing the
forbidden things. The intent of the section being
clear, the purpose of its enactment being plain, it will
not be allowed to fail because of the omission of the
words "it shall be unlawful for," which should have
been placed at the beginning of the section, or the
words "shall be guilty of an offense," which should
have been added to the section. In Sams v. Sams'
Adm'r, 85 Ky. 396, 9 Ky. Law Rep. 24, 3 S. W. 593, the
court said: "It is a well-settled rule of construction
that the letter of a statute will not be followed when it
leads to an absurd conclusion; but, on the contrary, the
reason for the enactment must enter into its interpre-
tation, so as to determine what was to be accomplished
by it." This court has frequently inserted words in a
statute, and has often modified expressions for the
purposes of carrying out the legislative intent, when

it was apparent from a reading of the statute that the omission of words or their insertion in the wrong place was merely an error or omission. Commonwealth v. Grinstead, 108 Ky. 59, 55 S. W. 720, 57 S. W. 471, 21 Ky. Law Rep. 1444; Bird v. Commissioners, 95 Ky. 195, 24 S. W. 118, 15 Ky. Law Rep. 578; Maysville & Lexington R. Co. v. Herrick, 13 Bush, 123. Nor will this statute be held insufficient to punish violators of it. The omitted words necessary to perfect it will be supplied in accordance with the settled rules of statutory construction. It is a valid, enforceable law.

The real question in the case is: Are the publications complained of within the fair meaning of the statute? The prosecution is under that clause in the section prohibiting the publication or sale of any "obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper, picture, drawing, photograph, figure or image, or any written or printed matter of an indecent character;" and it is earnestly insisted on behalf of the Commonwealth that the publications complained of are indecent, lascivious, and lewd within the meaning of the statute, and the lower court erred in sustaining demurrers to the indictments. The newspapers in which the alleged offensive matter was published are daily papers printed and published in the city of Louisville. It is not contended that the chief feature or purpose of these papers is to publish obscene, lewd, lascivious, filthy, indecent, or disgusting matter. Indeed, such a contention would be entirely unfounded. It is nevertheless argued that it is not necessary to constitute a violation of the statute that the chief characteristics of the publication should be to record the commission of crimes or publish

Commonwealth v. Herald Pub. Co.

obscene or indecent articles, or that its general tone should be low or offensive to good taste, but that it is sufficient if in as much as one issue of the paper there may be found an article denounced by the statute. In this construction we concur. A paper, however clean and pure the matter contained in it may generally be, and if ordinarily it only published such news or articles as were chaste and suitable for family reading, yet, if it should in one issue print an article that was filthy or indecent, it would be subject to indictment and conviction. It is difficult to draw the line in cases of this character between publications that are permissible and those that come within the condemnation of the statute. Different persons have different views as to what constitutes a lewd, lascivious, or indecent publication. What one would condemn as vulgar, profane, or indecent, another might look upon as a legitimate and proper record of the news of the day, although all will readily agree that publications that have a tendency to corrupt the morals and deprave the taste of the people should be punished or suppressed. We may therefore safely say that no general rule can be laid down. Each case must be judged by the facts presented in it, and to the common sense of the courts and juries must be left the question whether or not the matter complained of, considering all the circumstances of its publication, is within the meaning of the statute. It may also be said that in the publication of court proceedings, and the transactions of public bodies, greater latitude must necessarily be allowed than would be permitted in the publication of matters of a more private or personal character. The Thaw trial was a notable criminal case—the public everywhere were interested in all of its details—and the newspapers of the

country, to gratify this desire, however depraved it might have been, published full accounts of it. It would not do to say that daily newspapers could not publish accounts of crimes or the proceedings of criminal courts, or matter relating to divorce suits, or breach of promise cases, or actions for alienation of affections, or prosecutions for rape or unlawful detention, although in these and many other trials involving violations of the civil and criminal laws of the county, as well as in readable incidents in the social business, and political lives of individuals, there often appears suggestions or facts that are immodest and immoral, if not indecent. We do not mean to hold that a newspaper is privileged to publish all the filthy and disgusting details that are developed by the evidence in court proceedings, or that sometimes come out in the scandals that appear in private life. There may be facts brought out on the trial of a case or in the exposure of an individual that would be so shocking to every sense of common decency as that to publish them would certainly be a violation of the statute. This again brings to mind the utter impracticability of setting down any standard by which the legality of publications can be measured, when the courts are called upon to apply to them the rule laid down in the statute, and illustrate the necessity of passing judgment upon each as it comes up. But the statute ought not to be applied with the same strictness to daily newspapers as to printed publications in the form of books or pamphlets that are wholly or in greater part devoted to the treatment of subjects that are lewd and scandalous, or to single or isolated articles designed to bring before the public the details of some indecent or disgusting transaction. Newspapers are established for the purpose of printing and

publishing the news of the day, made up as it is of a multitude of incidents gathered from all quarters of the globe, embracing every phase of human life, and dealing with every feature of human endeavor, and occasionally we may find in the columns of sheets usually free from objectionable matter articles that if published in other form would take on a more offensive aspect. And yet, these great vehicles of information, going as they do into almost every family and home, to be read alike by young and old, are not at liberty to print unrestrained any matter that in their opinion might appeal to the sensational or depraved tastes of some of their readers. They are not exempt from the operation of the statute, and must be careful not to violate its wholesome provisions.

The expressions in this opinion are not intended to apply to or embrace publications whose chief business it is to record crimes, or relate stories of human depravity and vice. These publications are not in the same class with the papers being considered. They are not entitled to the benefit of the doubt that will protect clean publications of good, moral character, and are dealt with in other sections of the statute. It is not our intention to impair the usefulness of the statute, or to place upon it such a construction as would enable any paper, periodical, or printed matter to escape condemnation, the facts justifying it; and yet, in our opinion the articles complained of, although dangerously near the forbidden line, are not within the fair condemnation of the statute, and we are not prepared to say that the trial judge erred in sustaining the demurrers.

Statutes similar to ours have been enacted in a number of states, and prosecutions under them have

often been the subject of review by the courts, with the result that they have uniformily been upheld and so interpreted as to accomplish the purpose of their enactment. We have examined a number of these cases, including all those cited by counsel for appellant; but with possibly two exceptions, they went off on points not germane to the question involved in this case, and for this reason we have deemed it unnecessary to cite them. Taking into consideration the fact that the publication complained of was a truthful record of a court proceeding our conclusion is that the matter complained of does not fall within the fair condemnation of the statute.

Wherefore the judgment of the lower court in each case must be affirmed.