## Shelby County Fiscal Court, She..y Record, et al. v. Cosine, et al., a firm doing business under the name of "Shelby News."

(Decided March 9, 1917.)

### Appeal from Shelby Circuit Court.

1. Counties—County Printing—Sheriff's Statement.—Section 1884, Kentucky Statutes, requiring the annual statement of the sheriff to be "published for at least two weeks in the paper published in the county, having the largest circulation therein," is mandatory,

and the fiscal court must award the printing to the newspaper published in the county, having the largest circulation therein.

2.  Statutes—Enforcement.—When a statute is plain and unambiguous, there is nothing for the court to do but to enforce it.

BEARD' & PICKETT for appellant.

W. T. BECKHAM for appellees

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This appeal involves the construction of section 1884, Kentucky Statutes, which provides that the sheriff or other collecting officer in addition to executing a revenue bond and making settlement annually, in writing, with the fiscal court showing the receipts and disbursements of the year, further provides that the statement or settlement shall be published, using this language: "And the same shall be published for at least two weeks in the paper published in the county having the largest circulation therein, if any be published in the county, if none, then the settlement shall be published by written or printed hand bills posted at the front door of the courthouse. and at least three other public places in the county."

This litigation arose out of a controversy between three weekly newspapers located in Shelby county, Kentucky over which one should publish the settlement or statement of the fiscal affairs of the county for the year ending March 1st, 1916.

The Shelby News, Shelby Record, and Shelby Sentinel each desired the printing. The fiscal court after considering the matter, declined to enter an order directing the publication to be had in the newspaper published in Shelby county having the largest circulation *therein,* but finally made an order inviting the three newspapers to submit bids upon the job of publishing the statements for two consecutive weeks and directed that the said work should be let to the lowest and best bidder. The Shelby News claiming to have the largest circulation of any paper published in the county and asserting that section 1884, Ky. Stats., with reference to the publication of the statement is mandatory and that the duties of the fiscal court, with respect to the publication of this statement are ministerial only, objected to the letting of this contract to *the lowest and best bidder* and filed its sworn statements showing its circu-

lation to be the largest of any paper published in the county, and upon the fiscal court declining to award it the contract, but awarding it to the Shelby Record, instituted this action in the Shelby circuit court seeking a mandamus compelling the fiscal court to reassemble, revoke its former order on the subject and award the contract for the printing to the Shelby News, it being the paper with the largest circulation published in Shelby county.

The Shelby Record and its editor filed a petition to be made parties to the action, and became parties defendant. The fiscal court made no defense, but the Shelby Record interposed a demurrer to the petition. The circuit court heard the question and determined that the plaintiff, Shelby News, and its editor, were entitled to the relief sought in the petition. Thereupon a judgment was entered, ordering and directing the fiscal court of Shelby county to reassemble and to award the contract for the printing of the statement of the sheriff, to the newspaper published in Shelby county having the largest circulation *therein.* This order followed the language of the statute, but the petition, it will be observed, did not do so. From this order and judgment, overruling the demurrer, the defendant, Shelby Record, and its editor, appeals to this court asking a construction of the section of the statute, *supra.*

The statute is not ambiguous, but on the contrary is quite plain and easy of construction. The legislature had the right and it was within its power to require the fiscal courts of the several counties to publish the statement of the sheriff, showing the financial status of the county, and in so doing it possessed the power to say how the advertising or publicity should be had. It, therefore, provided for the publication of the settlement, which is a detailed statement of the receipts and disbursements of the county, saying: "The same shall be published for at least two weeks in the paper published in the county having the largest circulation *therein,* if any be published in the county."

This statute was passed in the interest of the public good. In such matters publicity is a safeguard, which, when well employed, renders the public revenue even more secure than iron bars or fire-proof safes. The fiscal affairs sometimes have fallen into such bad way that those having them in charge have carefully with-

held and guarded the true condition, less the public become informed and select a new set of officers at the next ensuing election. To prevent this, and that the taxpayers and real persons in interest might know the facts, the legislature has provided for the publication of this statement. It did not leave it in the discretion of the fiscal court to publish the statement if in its judgment it should think best, but the provision is mandatory, and the publication must be made, whether it suits the convenience or the financial condition of the county or its fiscal agents, or not. It has a beneficent purpose, and when well employed, no doubt, has a wholesome influence. The exact status of the financial affairs of the county is brought home to those directly affected. To give the fiscal court a discretion as to whether the statement should be published, or how it should be published, would, in cases in which it was most needed, and primarily intended to correct, defeat the whole purpose of the statute. Those counties whose financial affairs have been so conducted as to warrant the officers in voluntarily making public the receipts and disbursements, are not the ones intended to be reached by this act, but it is those counties whose affairs have been so mismanaged that the fiscal court would rather hide than exploit the real conditions. The county newspaper usually reaches a very large per cent. of the population of the county and its contents are carefully read. Its influence is far reaching. If its editor be a sensible, discreet and industrious citizen the paper will accomplish great and lasting good. Such an institution should be recognized and encouraged.

To make the statute more effective and to bring the information contained in the statement to the attention of the greatest number of taxpayers, and the people generally, the act provides that the publication must be made in the newspaper published in the county having the largest circulation *therein*. It sometimes happens that a newspaper published in a county, having the largest circulation of any paper published therein, does not at the same time have the largest circulation *in that county* of any newspaper published in the county. A newspaper having the largest circulation, if it did not reach the people of the county where published, but went beyond the county into other counties or states would not meet the purposes or requirements of the stat-

ute. Two things must concur: The paper must be published in the county, and it must have the largest circulation *in that county* of any paper published therein. While the fiscal court has no power or authority to cause the statement of the sheriff to be published by a newspaper which offers the lowest and best bid, irrespective of its circulation, it does have the right, and it is its duty, to obtain the facts and ascertain which newspaper, among those published in the county, if there be more than one, has the largest *bona fide* circulation. When this fact is ascertained nothing remains but to award the contract to that publication.

It is argued in the brief of appellant that this will give a monopoly of the business to one paper in a county and that a high and exorbitant price will be charged by the publisher, whereas, by competitive bidding a much less rate could be obtained. Kentucky Stats., subsec. 3, of section 14a, fixes the rate to be charged for such advertisement, in the following language:

"That for all newspaper advertisement required by this act or other law, the publisher shall be entitled to receive as full compensation for such advertisement, at the rate of 50c per lineal inch, single column, solid, 8 point measure, for each insertion."

It is also urged that 50c per lineal inch, single column, is a much higher price than can be had by competitive bidding. This may be true, and the case under consideration well illustrates the point, for the Shelby Record in bidding on this particular job, made a price of 24c per lineal inch. This hardship, if it is a hardship, cannot be corrected by this court. The legislature is the law-making body. It fixed the rate and may change it. This court cannot change the law, but can only construe that which is made by the legislature. The two statutes we have under consideration here, however, are too plain and unambiguous to even admit of construction. If the rate fixed by the legislature is too high, the remedy is by amendment or new statute. As is said in Robertson v. Robertson, 100 Ky. 696:

"When a statute is plain, and peremptory, there is nothing for the court to do but to enforce it as it is written."

The rule is that the construction of a statute is for the court, but where the language is not ambiguous, any resort to its construction by others is improper.

Trustees of Eddyville Graded Common School v. Board of Education of Kuttawa Common School District No. 29, 141 Ky. 126.

"In the interpretation of a statute, words in common use, are to be construed in their natural, plain and ordinary significance. It is a very well settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequence or public policy; and it is the plain duty of the court to give it force and effect." 36 Cyc. 1114. "Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain the object, it is proper to consider the occasion, and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one, and the statute should be given that construction which is best to advance this object, by suppressing mischief and securing the benefits intended." 36 Cyc. 1110.

A careful reading of the petition of the plaintiff discloses the insufficiency of the allegations thereof.

While it is alleged that the Shelby News has the largest *bona fide* circulation of any newspaper published in Shelby county, Kentucky, it nowhere alleges that the circulation *is the largest in Shelby county* of any *paper published therein.* As pointed out above, it is not sufficient that the newspaper has the largest circulation of any paper published in the county, but the circulation in the county must be the largest also. It, therefore, follows that the demurrer to the petition should have been sustained. For this reason the judgment is reversed, for proceedings consistent with this opinion.