## Commonwealth v. Hatfield Coal Company.

(Decided December 19, 1919.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Statutes—Power of Courts to Reform and Reconstruct.—In order that the intention of the legislature may be accomplished and legislation saved from contradictions, omissions or absurdities the court may reconstruct sections, paragraphs and sentences by transposing words or adding or omitting words.

2. Constitutional Law—Classification of Persons and Corporations—Different Penalties May Be Imposed on Each.—The legislature in the enactment of laws designed to prohibit monopolies, trusts and combinations, may deal separately in the same act with persons and corporations, and impose different penalties on each class.

3. Constitutional Law—Classification of Persons and Corporations—Different Penalties May Be Imposed on Each.—An act to prohibit pools, trusts, combinations and monopolies, that imposed a much heavier penalty on corporations than on persons, was not violative of either the state or federal Constitution.

4. Statutes—Constitutional Law—Invalid Sections and Provisions In a Statute May Be Rejected.—Unconstitutional sections and provisions may, under some crcumstances, be eliminated from an otherwise valid act without affecting the validity of its other part if that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent independent of that which was rejected.

5. Statutes—Constitutional Law—Invalid Sections and Provisions Invalidate Whole Act—When.—If, however, it appears that the legislature would not have passed the act if the invalid section

had not been a part of it it can not be rejected, and the whole act must be declared invalid.

6. Statutes—Constitutional Law—Invalid Section Invalidates Whole Act—When.—Where the legislature struck out of a proposed bill a valid section and inserted an invalid one the presumption is that the legislature would not have passed the act without the invalid section, and therefore it can not be stricken out, and the whole act must be held invalid.

7. Constitutional—Class Legislation—Example of Unconstitutional—An act that subjected persons and corporations engaged in mining, manufacturing or transportation to heavy penalties if they became members of any pool, trust or combination in restraint of trade, and that permitted persons and corporations engaged in other lines of business to become members of such pools, trusts and combinations, was unconstitutional on account of its arbitrary classification.

8. Monopolies—Trusts—Combinations—Statute Law and Common Law in Force.—The common law as well as the act of 1890 contained in sections 3915-3921 prohibiting unlawful pools, trusts and combinations is in force in this State.

B. L. BLAKELY and CHARLES H. MORRIS, Attorney General, for appellant.

M. H. McLEAH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Affirming.

The lower court sustained a general demurrer to the following petition in a penal action and the Commonwealth appeals:

"The plaintiff states that the defendant, the Hatfield Coal Company, is a corporation organized under the laws of the Commonwealth of Kentucky, and authorized by its charter, among other things, to produce, buy and sell coal and that it does, under its said charter, buy and sell coal in the Commonwealth of Kentucky, and in Kenton county and elsewhere. Plaintiff states that hitherto at a time unknown to this plaintiff or its officers and in a manner unknown to the Commonwealth of Kentucky or its officers, the defendant did enter into, become a member of, and participate in a pool, trust, agreement, combination, confederation or understanding with divers and sundry persons and corporations in restraint of trade or competition in the importation, transportation, purchase and sale of a certain article of merchandise, to-wit.:

coal, and that said combination, agreement, confederation, or understanding was had and made for the purpose of regulating, controlling and fixing the price of coal in Kenton county, Kentucky, and elsewhere in Kentucky, and to maintain such price when so regulated and fixed, and therefore said unlawful conspiracy, understanding, combination, confederation and agreement was had and entered into with a view of increasing or attempting to increase the market price of coal.

"Plaintiff further alleges that in furtherance of the unlawful conspiracy, the defendant, the Hatfield Coal Company or its officers or agents, has acquired interest in other corporations engaged in a similar line of business, for the purpose of placing the management and control of said corporations under its influence, and with the intention to limit and fix the price of said article, and to prevent, restrict or diminish the production of said article.

"Plaintiff further states that by reason of the wrongful acts of the defendant in entering into such conspiracy and combination the price of coal in Kenton county has been fixed and maintained by all of the dealers in said county at a uniform rate. That at divers and sundry times, the defendant, the Hatfield Coal Company, co-operating with its other confederates, in violation of the law, have without cause or reason, simultaneously increased the price of coal in Kenton county. That said defendant and its confederates by reason of their unlawful acts, have stifled and destroyed competition in said county, and have prevented the inhabitants of said county from purchasing coal, except at the unreasonable rates unlawfully fixed by the defendant, the Hatfield Coal Company, and its associates or confederates.

"Wherefore, the Commonwealth of Kentucky prays that the defendant, the Hatfield Coal Company, be declared by this court to have forfeited its corporate rights and franchises, and that the same shall be by this court declared forfeited, void and of non-effect, and that the right of the defendant company to transact business in this Commonwealth shall cease and determine, and that all of its property including its real estate, vessels, mines, machinery, money, evidences of indebtedness, choses in action, and all personal property of every other kind and description and wherever situated, be forfeited unto the

state, or in lieu thereof that the court assess a fine against the defendant company of ten thousand ($10,000.00) dollars."

The penal action was instituted under an act passed by the Legislature in March, 1916, and the demurrer was sustained upon the ground that the act was unconstitutional.

The title reads: "An Act for the prevention of pools, trusts, conspiracies and combinations in restraint of trade, and to define same, and to prescribe penalties, and provide methods for the infliction thereof."

The first section of the act reads:

"A trust or monoply as used in this act, unless a contrary intention appears, is an association or combination of any number of persons established or organized prior, or subsequent, to the passage of this act, and either in the state of Kentucky or elsewhere, and whether incorporated or unincorporated, having as its object, or as one of its objects, that of fixing, influencing or regulating the supply, demand or price of any goods, product or commodity in the state of Kentucky, or elsewhere; or that of creating or maintaining, a monopoly in Kentucky, or elsewhere, whether complete or partial, in the supply or demand of any goods, product or commodity.

The second section reads:

"The word 'person' or 'persons,' as used in this act, shall include natural persons, partnerships, associations of persons and corporations created, or organized, by, or under, the laws of this state, or under the laws of any other state or country."

The third section reads:

"Any person who shall create, enter into, become a member of, or participate in, any pool, trust, agreement, combination, confederation or understanding with any person or persons, in restraint of trade or competition in the importation, transportation, manufacture, purchase or sale of any goods, product or commodity in this state, shall be deemed guilty of a conspiracy in restraint of trade."

The fourth section reads:

"Any person who shall create, enter into, become a member of, or participate in, any pool, trust, agreement, combination, confederation or understanding with any other person or persons to regulate, control or fix the

price of any article of manufacture, mechanism, or part thereof, merchandise or commodity, or to maintain such price when so regulated or fixed, or shall enter into, become a member of, or participate in, any pool, trust, agreement, contract, combination, confederation or understanding to fix or limit the amount of any article of manufacture, mechanism, or part thereof, merchandise, commodity, shall be deemed guilty of a conspiracy in restraint of trade.''

The fifth section reads:

''Any two or more persons engaged in buying or selling any article of commerce, manufacture, mechanism, or part thereof, or other commodity, or who shall create, enter into, become a member of, or participate in, any pool, trust, agreement, combination, confederacy, association or understanding to control or limit the trade in any such article or thing, or to limit competition in such trade by refusing to buy from, or sell to, any other person any such article or thing aforesaid, for the reason that such other person is not a member of, or a party to, such pool, trust, combination, confederacy, association or understanding, or who shall boycott, or threaten, any person for buying or selling any such article or thing to any other person who is not a member of, or a party to, such pool, trust, agreement, combination, confederacy, association or understanding, shall be deemed guilty of a conspiracy in restraint of trade.''

The sixth section reads:

''All arrangements, understandings, agreements, contracts, combinations or promises made, or entered into, between any two or more persons, designed or made with a view to lessen, or which tend to lessen lawful trade, or full and free competition in the importation, transportation, manufacture or sale in this state of any goods, product, commodity or article; and all arrangements, contracts, agreements, combinations, promises or understandings made, or entered into, between any two or more persons, which are designated, or made, with a view to increase, or which tend to increase, the market price of any product, commodity, goods or article, are hereby declared to be against public policy, unlawful and void, and any person or persons creating, entering into, becoming a member of, or party to, any such arrangements, contracts, promises, agreements, combinations or understandings,

shall be deemed guilty of a conspiracy in restraint of trade.''

Section 7 provides that ''Any corporation created or organized by or under the laws of this state, which shall be guilty of any violation of the provisions of this act, shall, upon proper proof being made thereof in any court of competent jurisdiction in this state, be declared by the court to have forfeited its corporate rights and franchises, and the same shall be, by the court, declared forfeited, void and of non-effect, and its right to transact business in this state shall thereupon cease and determine, and such court shall, by such judgment and decree, also declare all or any part of the property of such corporation forfeited unto the state; provided, however, that the courts may in lieu of the forfeiture of its corporate rights and franchises, or in lieu of the forfeiture of all or any part of the property of such corporation, assess against it a fine in any sum not to exceed $10,000, and should a corporation continue to violate the law after having been adjudged guilty such continuance shall constitute a separate offense; and any corporation created or organized by or under the laws of any other state or country, which shall violate any of the provisions of this article, shall, upon proper proof being made thereof in any court of competent jurisdiction of this state, be declared by the court to have forfeited its right and privilege thereafter to do any business in this state, and the same shall, by the court, be declared forfeited and of non-effect, and it shall thereupon cease to do business in this state, and such court shall, by judgment and decree, declare all or any part of the property in this state of such corporation forfeited to the state; provided, however, that the court may in lieu of the forfeiture of the right and privilege of such corporation to do business in this state, or in lieu of the forfeiture of all or any part of the property of such corporation, assess against it a fine in any sum not to exceed $10,000, and should such corporation continue to violate the law after having been convicted, such continuance shall be deemed a separate offense; and in all proceedings for the violation of any of the provisions of this article against any corporation created or organized under the laws of this or any other state or country, proof of the acts of any person who has been acting as agent of such corporation in transacting

its business in this state in the name, behalf or interest of such corporation shall be received as *prima facie* proof of the acts of the corporation itself. It shall be the duty of the clerk of the court in which judgment of forfeiture shall be rendered as herein provided for, to certify the decree thereof, to the secretary of state and to the insurance commissioner, who shall take notice and be governed thereby as to the corporate powers and rights of said corporation; and in case any court shall render a decree forfeiting all or any part of the property of any corporation violating the provisions of this article, such court shall appoint a receiver therefor to dispose of the same in such manner as the court may direct, and the net proceeds arising from the sale thereof shall be paid into the state treasury in the manner that fines are now so paid. No prosecution or penal action shall be brought against any corporation or its agents for any violation of the terms of this act committed prior to a final judgment in favor of the Commonwealth in a proceeding taken under this section."

Section 15 provides, "That any person violating any of the provisions in this act, or who shall do any act prohibited, or declared unlawful herein, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not to exceed $5,000, except where a different penalty is provided in this act, or the penalty herein prescribed may be recovered by penal action instituted in the name of the Commonwealth of Kentucky in any court having jurisdiction under the provisions of this act.

Section 20 reads:

"The provisions of this act shall not apply to any organization. or association having no capital stock or not engaged in the business of mining, manufacturing or transporting any article or commodity."

Several objections are pointed out to the validity of the act, among them the confusing, if not absurd, provision, added by amendment and which is the last sentence in section 7, which, it is claimed, makes the act incapable of enforcement against corporations. It is possible, however, that under the power lodged in the courts to reform and reconstruct sections, paragraphs and sentences of legislative acts, by transposing words or sentences, or adding or omitting words, in order that the intent of the

Legislature may be accomplished, that this sentence could be so reformed and reconstructed as to remove the destructive effect a literal rendering would produce. Endlich on Interpretation of Statutes, section 295; Bird v. Board of Commissioners of Kenton Co., 95 Ky. 195; Com. v. Grinstead and Tinsley, 108 Ky. 59; Com. v. Herald Publishing Co., 128 Ky. 424; James, Auditor v. United States Fidelity and Guaranty Co., 133 Ky. 299; Singleton v. Com., 164 Ky. 243. We need not, however, for reasons to be later stated, undertake this task.

It is also urged that section 7 imposed so much heavier penalties on corporations than are imposed upon persons by section 15, that this discrimination brings the act within the condemnation of the Fourteenth Amendment to the Federal Constitution by denying to corporations the equal protection of the law. It will be noticed that under section 15 persons found guilty of violating the provisions of the act may be "fined in any sum not to exceed $5,000"; while under section 7 a corporation found guilty may be "fined in any sum not to exceed $10,000," or the court may, upon a finding of guilt, enter a judgment denying it "the right to do business in the state and as a part of the judgment declare all or any part of the property of such corporation forfeited unto the state."

The difference in the penalties imposed on persons and corporations is very great and yet we do not think the inequality oppressive or unreasonable or the punishment inflicted on guilty corporations excessive, except as to that provision that works a forfeiture to the state of the property of offending corporations. This drastic penalty would appear to be unreasonable and oppressive, but aside from this forfeiture feature, concerning which we need not in the view we have of the case express any further opinion, the remainder of the section is not open to objection on the ground that in imposing heavier penalties on corporations than on persons it violates the Federal Constitution by denying to corporations the equal protection of the law.

It is a notorious fact that corporations are the principal offenders against laws such as this, that are intended to prohibit commercial pools, trusts and combinations organized to restrain trade, or raise, fix or lower the prices of commodities. Indeed, it is seldom that offenses of this

nature are committed by individuals acting in a personal and collective capacity.

It is a further well known truth that the infliction of a fine, payable in money, would in many cases not be adequate punishment for corporations engaged in these unlawful practices so detrimental to the public good; although a penalty of this kind, especially when coupled with imprisonment, would be amply sufficient to deter individuals from such practices, and be adequate punishment if found guilty of engaging in them.

In view of these well known conditions, and to the end that offenders may be dealt with in a manner that will accomplish the desired result, it is a common thing to find in legislation of this character provisions similar to those contained in this act.

As well said in Thompson on Corporations, Vol. 5, section 5614, "Experience has shown that the assessment of fines against corporations and even the imprisonment of corporation officers do not prevent or materially lessen their unlawful combinations . . . . The effectual and summary remedy that should be provided and that should be enforced in cases where corporations combine in violation of anti-trust statutes of the Federal government or of the various states is that the charter of any such corporation should be forfeited and the corporation immediately dissolved. No other punishment is adequate."

But in view of the fact that the act contains a section that in our opinion invalidates it as a whole we may pass this question with a mere citation of the authorities that in our opinion sustain us in the statement that the penalties with the exception stated are not oppressive or unreasonable and that the classification made is based on natural and reasonable grounds.    Com. v. Remington Typewriter Co., 127 Ky. 177; Com. v. Ward, 136 Ky. 146; State Racing Commission v. Latonia Agricultural Association. 136 Ky. 173; Katzman v. Com., 140 Ky. 124; State v. Central Lumber Co., 24 S. D. 136, 42 L. R. A. (N. S.) 804; Standard Oil Co. v. State, 117 Tenn. 618, 10 L. R. A. (N. S.) 1015; Barbier v. Connolly, 113 U. S. 27, 28 Law Ed. 923; King v. Crowley, 113 U. S. 703, 28 Law Ed. 1145; Missouri Pacific Ry. Co. v. Mackey, 127 U. S. 205, 32 Law Ed. 107; Bell's Gap Railroad Co. v. Com., 134 U. S. 232, 33 Law Ed. 892; Waters-Pierce Oil Co. v. State of Texas, 177 U S. 28, 44 Law Ed 657; Connolly v. Union

Sewer Pipe Co., 184 U. S. 540, 46 Law Ed. 679: National Cotton Oil Co. v. State of Texas, 197 U. S. 115, 49 Law Ed. 689; Waters-Pierce Oil Co. v. State of Texas, 212 U. S. 86, 53 Law Ed. 417; Standard Oil Co. v. State of Tenn.; 217 U. S. 413, 54 Law Ed. 817; International Harvester Co. v. State of Missouri, 234 U. S. 199, 58 Law Ed. 1276.

It will be observed that section 20, repeating it, reads: "The provisions of this act shall not apply to any organization or association having no capital stock or not engaged in the business of mining, manufacturing or transporting any article or commodity." This section, as appears from an inspection of the Senate Journals, was inserted by an amendment, while the act was on its passage, in lieu of the following section in the act when it was submitted to the Legislature:

"The provisions of this act shall not apply to any organization or association having no capital stock, and not engaged in the business of buying, sell, dealing in, manufacturing or producing any article of commerce or commodity."

A comparison of section 20 as submitted to the Legislature with section 20 as adopted by the Legislature shows at once the very material difference in the two sections. The proposed section only exempted from the operation of the act organizations or associations having no capital stock and not engaged in the business of buying, selling, dealing in, manufacturing or producing any article of commerce or commodity. In other words, although corporations, organizations, or associations, might not have any capital stock, yet, if they associated or organized themselves for the purpose of buying, selling, dealing in, manufacturing or producing any article of commerce or commodity, they would be subject to the penalties provided in the act.

In short, under the section as proposed, no persons, or corporations, without being amenable to the act, could form any pool, trust, combination or conspiracy in restraint of trade or for the purpose of fixing, influencing or regulating the supply, demand or price of any goods, product or commodity, nor enter into any arrangement or agreement having for its purpose the restraint of trade or the limiting of competition therein, nor do anything forbidden by the comprehensive terms of the act.

We make this broad statement because an association or corporation that had no capital stock, and was not engaged in the business of buying, selling, dealing in, manufacturing or producing any article of commerce or commodity, could not form any hurtful pool, trust, combination, or conspiracy to do the things forbidden by the act.

But section 20, as adopted, exempted from the provisions of the act not only corporations and associations having no capital stock but also all organizations or associations, without reference to whether they did or did not have capital stock, that were not engaged "in the business of mining, manufacturing or transporting any article or commodity." The plain purpose of the section was to limit its provisions and penalties to persons or corporations engaged in the business of mining, manufacturing or transporting any article or commodity.

Therefore any persons or corporations not engaged in these limited lines of business might, without becoming subject to the act, associate or organize for the purpose of fixing, influencing or regulating the supply, demand or price of any goods, product or commodity, or for the purpose of creating or maintaining a monopoly in the supply or demand of any goods, product or commodity, or to restrain trade or competition in the importation, transportation, manufacture, purchase or sale of any goods, product or commodity, or do anything else that the act with this section in forbids persons or corporations engaged in the business of mining, manufacturing or transporting from doing.

It would be difficult to frame a more partial or discriminatory statute than this one would be if section 20 is to be considered a valid part of it. It arbitrarily and without any reason therefor selects classes of persons and corporations engaged in certain lines of business and subjects them to the heavy penalties of the act if they violate its provisions; and at the same time arbitrarily and without reason exempts all other persons and corporations from the operation of the act, although the exempted persons or corporations might be engaged in lines of business under and through which they could accomplish, to the detriment of the public, all the things that the unfavored classes were prohibited from doing.

That classification of persons and corporations may be made, when the classification is not arbitrary, capri-

cious or oppressive, and is based on grounds that furnish a reasonable and natural basis for classification we have no doubt. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 42 Law Ed. 1037; Atchison, Topeka & Santa Fe Railroad Co. v. Matthews, 174 U. S. 96, 43 Law Ed. 909; American Sugar Refining Co. v. State of Louisiana, 179 U. S. 89, 45 Law Ed. 102; Seaboard Air Line Ry. v. Seegers, 207 U. S. 73, 52 Law Ed. 108; Watson v. Maryland, 218 U. S. 173, 54 Law Ed. 987. And it is equally well settled by the authorities we have cited that when such a classification is made the persons or corporations in each class may be dealt with either under criminal or penal statutes in a manner different from the persons or corporations in the other classes. But to uphold such a classification as was attempted to be made in this act would do gross violence to every principle of constitutional law and authority that has come under our notice. The act with section 20 in it is class legislation of the most pronounced and offensive type. It not only violates the Fourteenth Amendment to the Federal Constitution but is equally obnoxious to well settled and long established principles that lie at the very foundation of state constitutional law; the substance of which is that all laws to prevent and punish crimes and offenses of every nature must operate equally and alike upon all persons except when reasonable classification is permissible.

But notwithstanding the palpable invalidity of section 20 and its flagrant disregard of constitutional limitations, if it can be stricken from the act and the remainder of the act upheld, this may be done, because it is well settled that unconstitutional sections and provisions may, under some circumstances, be eliminated from an otherwise valid act, without affecting the validity of its other parts. Cooley's Constitutional Limitations, page 209; Com. v. Goldburg, 167 Ky. 96; Rogers v. Jacob, 88 Ky. 502; McArthur v. Nelson, 81 Ky. 67; Gayle v. Owen County Court, 83 Ky. 61; Allen v. Louisiana, 103 U. S. 80, 26 Law Ed. 318; Poindexter v. Greenhow, 114 U. S. 270, 29 Law Ed. 185.

There is, however, an important exception to the rule, under which the objectionable parts of a legislative act may be rejected without affecting the validity of the remainder of it. The principles controlling the rule as well

as the exception are thus stated in Cooley's Constitutional Limitations, page 210: "Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."

In Poindexter v. Greenhow, 114 U. S. 270, 29 Law Ed. 185, the court said:

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where

the court is able to see and to declare that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail.    To hold otherwise would be to substitute for the law intended by the Legislature one they may never have been willing by itself to enact.''

In Spraigue v. Thompson, 118 U. S. 90, 30 Law Ed. 115, the court, in considering a case in which the Georgia court had held that objectionable parts of a section might be stricken from it and the remainder sustained, said:

''It was held, however, by the supreme court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded, so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute which is unconstitutional may be rejected, and the remainder preserved and enforced.  But the insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the Legislature of Georgia the statute is made to enact what confessedly the Legislature never meant. It confers upon the statute a positive operation, beyond the legislative intent and beyond what anyone can say it would have enacted in view of the illegality of the exceptions.    We are, therefore, constrained to hold that the provisions of section 1512 of the Code of Georgia cannot be separated so as to reject the unconstitutional exceptions merely, and that the whole section must be treated as annulled and abrogated by section 4237 of the revised statutes.''

In Pollock v. Farmers' Loan and Trust Co., 158 U S. 601, 39 Law Ed. 1108, the court said:

''It is elementary that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected.  And in the case before us there is no question as to the validity of this act, except sections 27 to 37, inclusive, which relate to the subject which has been under discussion; and as to them we think the rule laid down by Chief Justice Shaw in Warren v. Charleston, 2 Gray 84, is applicable, that if the different parts 'are so mutually connected with and dependent on each other, as conditions, considerations or compensa-

tions for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fail with them.' ''

The question now is, can we with propriety strike this objectionable section from the act without disregarding the legislative intent in its enactment? Or, in other words, can we say that the Legislature would have passed this act if this section had not been a part of it? If we could reasonably conclude that the Legislature would have passed it with this section omitted we would not hesitate to reject it, because its rejection would leave, with the exception of the sentence added to section 7, a complete, intelligible and harmonious piece of legislation. But, on the other hand, if it appears that the Legislature would not have adopted the act with this section omitted we are not at liberty, for the reasons stated in the opinions cited, to reject it.

The solution of this question is not difficult when it is kept in mind that the Legislature refused to adopt section 20 as it appeared in the act when submitted to that body.

Its rejection of the original section, and the substitution of the section as it now reads, plainly shows that the Legislature intended to exempt certain favored classes from the operation of the law, and that it was not willing to enact a law that made subject to the provisions of the act the classes the Legislature desired to exempt.

The substituted section is out of harmony with the whole purpose of the act, and inconsistent with every material provision in it. The title as well as sections 7 and 15 clearly show that the act, before it was amended, was intended to apply to all persons, associations, organizations and corporations except the small classes, if indeed any, that were exempted by the original section 20. It is further obvious that the substitute for section 20, adopted by the Legislature, was inserted for the express purpose of exempting all organizations, associations and corporations except those engaged in the three classes of business mentioned in the adopted section. Both the original section and the substitute section were clearly expressed and easy to understand; and therefore it is made

plain that the Legislature, in making the change, fully understood what the change meant and purposely made it.

If the Legislature had not stricken from the act the original section, or if section 20 as it now stands had been in the original act, we might reasonably conclude that the Legislature would have adopted the act, although this section, as it now reads, had not been a part of it. But when the Legislature deliberately struck from the act a section bringing within the scope of its meaning all persons and corporations that might by organizing have the power to do the things forbidden by the act, and inserted in its place a section exempting from its operation large classes of persons and corporations that could do the prohibited things, we can not say that the Legislature would have adopted the act with this section omitted, without setting up our opinion against what the Legislature actually did in expressing its views.

In other words, to reject the section would be making a law that the Legislature declined to make. We would be putting in operation an act that the Legislature refused to adopt. This we cannot do. The patent invalidity of this section affects, for the reasons stated, the entire act and the whole of it must be declared unconstitutional.

A leading, instructive case on the subject under consideration and one that is very much in point is Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 46 Law Ed. 539. In that case the court had before it an Illinois statute defining trusts and conspiracies, and prescribed punishment therefor. It was substantially the same as the act now before us and contained one section—the ninth—reading:

"The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser." The act was attacked upon the ground that this section invalidated it as a whole and the court in so finding said in the course of its opinion:

"In prescribing regulations for the conduct of trade, it (the state) cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class engaged in the same domestic trade to do the same things with impunity. It is one thing to exert the power of taxation so as to meet the expenses of govern-

ment, and at the same time, indirectly, to build up or protect particular interests or industries.

"It is quite a different thing for the state, under its general police power, to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exertion of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates. . . . .

"We conclude this part of the discussion by saying that to declare that some of the class engaged in domestic trade or commerce shall be deemed criminals if they violate the regulations prescribed by the state for the purpose of protecting the public against illegal combinations formed to destroy competition and to control prices, and that others of the same class shall not be bound to regard those regulations, but may combine their capital, skill, or acts to destroy competition and to control prices for their special benefit, is so manifestly a denial of the equal protection of the laws that further or extended argument to establish that position would seem to be unnecessary.

"We therefore hold that the act of 1893 is repugnant to the Constitution of the United States, unless its ninth section can be eliminated, leaving the rest of the act in operation.

"The principles applicable to such a question are well settled by the adjudications of this court. If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative. The first section of the act here in question embraces by its terms all persons, firms, corporations, or associations of persons who combine their capital, skill, or acts for any of the purposes specified, while the ninth section declares that the statute shall not apply to agriculturists or live stock dealers in respect of their products or stock in hand. If the latter section be eliminated

as unconstitutional, then the act, if it stands, will apply to agriculturists and live stock dealers. Those classes would in that way be reached and fined, when, evidently, the Legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill, or acts in respect of their products or stock in hand. Looking, then, at all the sections together, we must hold that the Legislature would not have entered upon or continued the policy indicated by the statute unless agriculturists and live stock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the law to those within its jurisdiction who are not embraced by the ninth section.''

Treating this act as unconstitutional, the question is raised by counsel for Commonwealth, that the court erred in sustaining the demurrer to the penal action, because, it is said, that with the act of 1916 out of the way the prosecution might be sustained under the act of 1890, now section 3915-3921 of the Kentucky Statutes, or under the provisions of the common law, and that the petition stated a good cause of action under the act of 1890, or the common law.

Before the passage of the act of 1916 we held that the act of 1890 was in full force and effect and that the common law doctrine of restraint of trade was also in force in this state, saying in Gay v. Brent, 166 Ky. 833, that:

"They are living, companion pieces of the law, and either may be invoked, whichever is the most available, for the purpose of staying the unlawful activities of any agreement, pool, trust, combination or monopoly created or entered into by any corporation, partnership or association of persons for the purpose of suppressing competition, controlling the market, or regulating or fixing the price of any species of property."

To the same effect is Com. v. American Tobacco Co., 167 Ky. 156; Com. v. International Harvester Co., 167 Ky. 318.

Adhering to what was said in those opinions, it follows that the act of 1890 and the common law are now in force and effect, and as the act of 1916 was void from the beginning they were of course in effect at the time

the penal action in this case was filed. A reading of the petition, however, makes it clear that it was framed under and based on the act of 1916. And as there was substantial difference between the act of 1916 and the act of 1890 as well as between the act of 1916 and the common law we do not, under the circumstances, feel disposed to hold that the court committed error in sustaining the demurrer to the petition.

Wherefore, the judgment is affirmed.