## Providence Pub. Co. v. Hearin et al.

(Decided March 1, 1938.)

W. FRED HUME for appellant.

WITHERS & LISMAN and T. W. JOHNSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—Reversing.

This is an appeal from a judgment of the Webster circuit court sustaining a demurrer to the petition of the appellant. Plaintiff declined to plead further, and the petition was dismissed, followed by this appeal.

The Providence Publishing Company alleged that it publishes a newspaper known as the "Providence Enterprise," which has the largest circulation therein of any newspaper published in Webster county. It asserted that the appellee treasurer of the board of education of Webster county was threatening to publish the financial report of the Webster county board of education in a newspaper of inferior circulation, contrary to the provisions of section 3747a-1 of the Ken-

tucky Statutes. It asked that the defendant be enjoined from making any publication or incurring any expense in making any publication of the statement in any newspaper other than the "Providence Enterprise." There is no disagreement as to the facts, and the question presented is simply one of the proper construction to be placed on the statute involved. Dixon is the county seat of Webster county, although it is smaller than the city of Providence. It is conceded that the "Dixon Journal" has the largest circulation in the Webster county school district of any newspaper published in Webster county, although the "Providence Enterprise" has the largest circulation in the entire county. The question is therefore presented as to whether or not section 3747a-1 of the Statutes requires publication of the financial statement in the newspaper having the largest circulation in the entire county or in the newspaper having the largest circulation in the particular district for which the financial statement is made.

Section 3747a-1 provides, in part:

"Every public official of any county, graded school district, city, town or subdivision or district, less than a county, whose duty it is, by virtue of his office, to collect, receive, have the custody, control or disbursement of public funds of said county, graded school district, subdivision or district of said county, city or town, * * * shall at the expiration of each fiscal year prepare an itemized, sworn statement of such funds so collected, received, held or disbursed by him during the fiscal year just closed; * * * and such officer shall within thirty days after the close of the fiscal year cause such statement to be published in full *in a newspaper published in said county which has the largest circulation therein.*" * * *

It is contended by appellees, and was held by the trial court, that the adverb "therein" was intended to qualify the first phrase in the statute, and not the word "county" which is placed in juxtaposition to it. In other words, it is contended that "therein" means "in the district affected," and not "in the entire county." It is urged that the intent of the statute is to give publicity to the statement amongst those persons more particularly interested in it, and that we should therefore give the statute a construction in accord with its intent

rather than in harmony with the ordinary rules or grammar. We are referred to Sams v. Sams' Adm'r, 85 Ky. 396, 3 S. W. 593, 9 Ky. Law Rep. 24; Commonwealth v. Herald Publishing Co., 128 Ky. 424, 108 S. W. 892, 32 Ky. Law Rep. 1293, 16 Ann. Cas. 761; Bird v. Board of Com'rs of Kenton County, 95 Ky. 195, 24 S. W. 118, 119, 15 Ky. Law Rep. 578. In the last case cited this court quoted with approval the following statement from Endlich on the Interpretation of Statutes, p. 400, sec. 295:

> "Where the language of the statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment; to inconvenience or absurdity, hardship or injustice, not presumably intended,—a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving unusual meaning to particular words, sometimes by altering their collocation, or by rejecting them altogether, or by interpolating other words; the court having an irresistible conviction that the modifications thus made are mere corrections of careless language, and give really the true intention."

There can be no doubt of the soundness of the rule announced by these decisions and of the power and duty of the court to apply it in a proper case. The difficulty here is to determine whether the statute as written calls for the application of the rule. Manifestly, the Legislature had the right to require the publication to be made in the newspaper having the largest circulation *in the county.* Shelby County Fiscal Court v. Cosine, 174 Ky. 504, 192 S. W. 626. It was dealing with a general situation existing throughout the state, and not with the unique circumstances existing in Webster county. It can hardly be doubted that in most counties the newspaper having the largest circulation in the county will reach the greatest number of people in each political subdivision. It is likewise apparent that the Legislature may have considered the trouble necessary to ascertain the newspaper circulation in each subdivision of the county and the controversies that might thus arise to be undesirable and it preferred simply to enact a general rule which would thoroughly

meet the situation in the vast majority of cases. Certainly we cannot say that a grammatical construction or the use of the words in their ordinary interpretation leads, in the situation before us, "to a manifest contradiction of the apparent purpose of the enactment, to inconvenience or absurdity, hardship or injustice, not presumably intended." As pointed out by counsel for appellant, if we are to construe "therein" as qualifying a district less than a county, we must jump over 200 words, 13 commas, and 4 semicolons to find an antecedent. We are not incapable of performing this feat where it is necessary to give effect to an obvious legislative intent and when we have "an irresistible conviction that the modifications thus made are mere corrections of careless language." In the case before us, however, we are not prepared to say that the Legislature had an intent contrary to that expressed, giving the words used their ordinary interpretation in accordance with their sequence in the sentence. It may be true that the construction of the act contended for by appellees would make it a better law. That is a question for the Legislature, and not for us. We can do no more, under the circumstances here presented, than to give effect to the statute as it is written.

Judgment reversed.